# JOE ELLIOTT v. STATE.

### No. A-96.   Opinion Filed November 22, 1910.

1.   HOMICIDE—Information—Allegation of · Instrument — Variance. Under an information for manslaughter charging the death of the deceased to have been directly produced by a blow from the fist or foot of the defendant, a conviction cannot be had upon proof that the deceased was knocked down by the defendant and was killed by being trampled upon by a horse.

2.   SAME—Test of Variance. Where the instrument of· death alleged and that proved are substantially of the same character, capable of inflicting practically the same nature of injury in substantially the same manner, there is no variance. The question in each case is whether the nature and character of the injury and the manner and means of inflicting it as proved, are practically and substantially, though not identically, the same as that alleged.

3.   SAME. Where the allegation is that the accused directly inflicted the fatal wound, and the proof shows that the same was produced by some other different and independent agency, there is a fatal variance.

4.   SAME—Allegations—Prevention of Variance. Wherever there is doubt or uncertainty as to the means by which death was effected, all the different probable means should be alleged, either in separate counts in the indictment or information, or in the alternative in the same count, so as to provide against contingencies in the proof and prevent a variance.

(Syllabus by the Court.)

*Appeal from District Court, Caddo County; S. H. Russell, Judge.*

Joe Elliott was convicted of manslaughter in the second degree, and his punishment assessed at a fine of $1,000.00. From an order overruling a motion for a new trial, he appeals. · Reversed and remanded.

*A. J. Morris,* for plaintiff in error.—Citing:  3 Greenleaf on Ev., sec. 140; *Guedel v. People,* 43 Ill. 226; *Helmerking v. Comm.* (Ky.)· 37 S. W. 264; *Clark v. Comm.* (Ky.) 63 S. W. 740; *State v. Reed* (Mo.) 55 S. W. 278; *Danforth v. State* (Tex.) 69 S. W. 159; *Rex. v. Kelley,* 1 Moody, C. C. 113, 1 Lewin Cr. Cas. 193; *Rex v. Thompson,* 1 Moody, C. C. 139, 1 Lewin Cr. Cas. 194;

*Brown's Case,* 1 Lewin Cr. Cas. 165; 1 Whart. Cr. Law (10th Ed.) sec. 519; 1 McLain, Cr. Law, sec. 377.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

RICHARDSON, JUDGE. The information in this case charged plaintiff in error, hereinafter called the defendant, with the crime of manslaughter in the first degree. As to the manner of the killing, it alleged in substance that with his clenched fist the defendant struck one Isaac Carrico upon the head, breast and left side, and with his feet stamped and crushed the said Isaac Carrico, and by the said striking, stamping and crushing then and there wounded the said Isaac Carrico, "from which said striking, kicking, stamping and crushing done and committed as aforesaid he the said Isaac Carrico did then and there die." On a trial upon this information the defendant was convicted of manslaughter in the second degree.

The evidence disclosed that the defendant and the deceased were engaged in a fist fight in the former's yard. The deceased had just dismounted from a horse on which he had ridden up, and during the fight he held the horse by the bridle reins through which he had thrust his left arm, and the horse was rearing and plunging. The evidence for the state further tended to show that in the difficulty the defendant knocked the deceased down, and that the latter fell close to the horse's forefeet. A woman and her daughter who lived nearby, who witnessed the difficulty, and were not related to either party, each testified that after the deceased fell it appeared that the horse stamped upon him with his forefeet, and the deceased expired within a few minutes thereafter. An examination of deceased's body by a physician and the coroner's jury disclosed that he had received some blows about the head, none of which, however, were mortal or even dangerous in their effect; and also that a rib was broken immediately over the heart and the flesh bruised there, and the physician testified that this was the fatal wound. The defendant testified that during the fight he

4 Cr.—15

struck the deceased only about the head; that the horse in rearing and lunging struck each of the combatants and knocked them both over; that when the defendant got up the deceased was lying on the ground and the horse had pulled loose; that it was immediately apparent that deceased was seriously injured, and defendant called for and procured some water and tried to revive and aid him, but he died in a few moments.

The court instructed the jury as to manslaughter in the first degree, predicating the instruction upon the theory that deceased was killed by a blow delivered with defendant's fists; and the court then gave the jury the following instruction as to manslaughter in the second degree:

"12. Or, if you believe from the evidence beyond a reasonable doubt that the defendant did unlawfully commit an assault and a battery upon the person of Isaac Carrico, as such an assault and battery have been herein before defined to you, by then and there striking the said Carrico, as alleged in said information, in and upon the head, or breast, or left side of the said Carrico and did then and there by the act of striking and assaulting the said Carrico inflict upon the said Carrico an injury and a wound from the effect of which, and as the result of which, the said Carrico then and there fell to the ground and by reason of the said acts of the defendant was then and there prostrate and helpless upon the ground, and you further believe that the defendant then and there knew that the said Carrico was so helpless and prostrate upon said ground and then and there knew that he was in imminent danger of being killed, or of such bodily harm being done him as would probably result in the death of said Carrico, by being trampled upon or otherwise injured by the horse of deceased, and you further find that while in such position and condition the said Carrico was trampled upon and injured by said horse, and from which said trampling upon and injury the said Carrico then and there died, and that it was in the power of the defendant to prevent the said horse from so trampling upon and injuring the deceased, if you find that he was so injured and trampled upon, and you believe that the said defendant failed and neglected and refused to prevent the injury and that by reason of his said failure and neglect and refusal so to do, the said Carrico was then and there wounded and injured and then and there died from

the effect of said wound and injury, then you are instructed that under such circumstances as herein in this paragraph defined to you, the defendant is guilty of manslaughter in the second degree and you will so find."

The action of the court in giving this instruction is assigned as error, and we think the assignment well taken. This instruction told the jury in effect that if the defendant unlawfully struck the deceased and knocked him to the ground where he was in danger of being trampled upon by the horse, and that the defendant then saw and realized deceased's said danger, and that it was in the defendant's power to rescue him from that danger, and that the defendant failed and neglected to do so, and that deceased was killed by being trampled upon by the horse, then the jury should convict the defendant of manslaughter in the second degree. Certainly a person is guilty of an unlawful homicide who wilfully and wrongfully or through culpable negligence casts or knocks another under a horse's feet, whereby the other is killed. If that be done unlawfully and with a premeditated design to effect death, it is murder. And also under proper allegations in the indictment or information, the jury might well find such an act, if done wilfully and unlawfully, though without a design to kill, to be one imminently dangerous to the deceased, evincing a depraved mind in the perpetrator, regardless of human life, and therefore murder. Under other circumstances it could be manslaughter in either the first or second degree. But under an information charging the death of the deceased to have been directly produced by a blow from the fist or foot of the accused, a conviction for no degree of unlawful homicide can be had upon proof that death was caused by the deceased's being trampled upon by a horse, although the wrongful act of the accused may have placed the deceased in the situation where the trampling could and did occur. Such a showing constitutes a fatal variance between the allegation and the proof.

The law is fairly liberal to the prosecution so far as the question of variance between the instrument of death alleged and that

proven is concerned; and where the instrument laid and that proved are substantially of the same character, capable of inflicting practically the same nature of injury in substantially the same manner, there is no variance. Thus evidence as to a dagger, sword, bayonet, hatchet, etc., have been held to support the averment of a knife; striking with a stick, club, metal bar or pistol an allegation of striking with a rock; shooting with a gun an allegation of shooting with a pistol; and strangling with a scarf or cord an averment of a strangling or choking with the hands. But if the allegation be of a stabbing or shooting and the evidence shows a poisoning or starving, the variance is fatal. The question in each case is whether the nature and character of the injury and the manner and means of inflicting it as proved, are practically and substantially, though not identically, the same as that alleged. And it is held with practical uniformity that where the allegation is that the accused directly inflicted the fatal wound, and the proof shows that the same was produced by some other different and independent agency, though under such circumstances as to make the accused criminally responsible therefor, there is a fatal variance. Thus it is said in Wharton on Homicide, 3d Ed., sec. 567: "Where an indictment stated that the defendant assaulted the deceased, and struck and beat him upon the head, and thereby gave him divers mortal blows and bruises of which he died, and it appeared in evidence that the death was by the deceased falling on the ground in consequence of a blow on the head received from the defendant, it was held that the cause of death was not properly stated"; citing *Rex v. Thompson,* 1 Moody, C. C. 139; *State v. Reed,* 154 Mo. 122, 55 S. W. 278; *People v. Tannan,* 4 Park. Crim. Rep. 514; *Collins v. State* (Tex. Cr. App.) 83 S. W. 866; *Rocha v. State,* 43 Tex. Cr. Rep. 169, 63 S. W. 1018; *Gibson v. Com.,* 2 Va. Cas. 111; *Rex .v. Kelly,* 1 Moody, C. C. 113; *Wrigley's Case,* 1 Lewin, C. C. 127; *Rex v. Marlin.* 5 Car. & P. 128; *Gipe v. State* (Ind.) 75 N. E. 881, 1 L. R. A. (N. S.) 419.

Greenleaf on Evidence, vol. 3, sec. 140, states the rule thus: "But if the evidence be of a death in a manner essentially different

from that which is alleged,— as if the allegation be of stabbing or shooting, and the evidence be of poisoning, or if the allegation be of death by blows inflicted by the prisoner, and the proof be that the deceased was knocked down by him and killed by falling on a stone, the indictment is not supported."

And the Court of Appeals of Kentucky, in *Helmerking v. Com.*, 100 Ky. 74, 37 S. W. 264, held that "upon the trial of a defendant under an indictment charging him with murder by 'striking, beating, bruising and mortally wounding' the deceased, he cannot be convicted upon evidence that he knocked deceased down, and that in falling deceased struck his head against some hard substance which caused his death." See, also, *Clark v. Com.*, 111 Ky. 443, 63 S. W. 740; *Phillips v. State*, 68 Ala. 469; and *Guedel v. People*, 43 Ill. 226.

In *State v. Reed*, 154 Mo. 122, 55 S. W. 278, it was held that "where an indictment for homicide charged that death resulted from a blow with a pick, and several witnesses testified that death resulted from a fall on the pavement caused by a blow from defendant's fist, such evidence, if true, constituted a fatal variance; and hence defendant was entitled to an instruction that if the jury found such evidence to be true, they should acquit, though there was evidence to the contrary."

In *State v. Townsend* (Del.) 1 Houst. Cr. Cases, 337, where the indictment was in two counts, one alleging the fatal wound to have been inflicted by a blow on the head delivered with a brick-bat, and the other, by a blow delivered with a "black-jack loaded with lead," the court said: "If the deceased's skull was fractured, not by a blow of some kind inflicted by the prisoner, but by his falling after. he was struck by. him, with his head against a stone or some other hard substance in the street, and there is sufficient evidence to satisfy the jury that such was the case, then the prisoner could not be convicted of manslaughter or any other offense under the indictment, because it does not so allege the killing, but in a wholly different and in a much more direct manner. Or, if the fatal blow was given in any other method, or in any way sub-

stantially and. essentially different from those alleged in the indict-
.ment,—the prisoner should be acquitted." See, also, *State v. Taylor*
(Del.) 1 Houst. Cr. Cases, 436; and *Witt v. State* (6 Cold.) 46
Tenn. 5.

We think the instruction complained of clearly erroneous un-
der the allegations in the information. Wherever there is doubt
or uncertainty as to the means by which death was effected, all
the different probable means should be alleged, either in separate
counts in the indictment or information, or in the alternative in
the same count, so as to provide against such contingencies in that
respect as are likely to arise from the proof.

The cause is reversed and remanded with directions to set
aside the judgment and grant the defendant a new trial.

FURMAN, PRESIDING JUDGE. and DOYLE, JUDGE, concur.