# HECTOR LADY v. STATE.

No. A-3413—Opinion Filed Oct. 16, 1920.

(192 Pac. 699.)

(Syllabus.)

1. **APPEAL AND ERROR—Review—Sufficiency of Evidence.**
Where there is ample evidence in the record from which the jury
was authorized reasonably to conclude that defendant is guilty
of the crime of which he was convicted, the conviction will
not be disturbed because of alleged insufficiency of the evidence,
although same is conflicting.

2. **WEAPONS—Discharging Firearms in "Public Places."** A
public road or highway, which has for many years been open
for public travel, and is a place where the public has a right
to go and be at all hours of the day, is in no sense a private
road or place, but is a "public place," within the meaning of
section 2577, Revised Laws 1910, making it a misdemeanor for
any person to wilfully discharge any species of firearm in any
public place.

3. **HOMICIDE—Instruction—Manslaughter—Homicide While Com-
mitting Misdemeanor.** Where, in a trial for murder, the evi-
dence discloses that defendant wilfully discharged his pistol in
a public place, by reason of which act deceased was killed,
without any apparent premeditation or design to effect death
on the part of defendant, it is proper for the court to instruct
the jury upon the law of manslaughter in the first degree per-
petrated by a person engaged in the commission of a misde-
meanor, as defined in the first subdivision of section 2320, Re-
vised Laws 1910.

4. **HOMICIDE—Harmless Error—Instructions.** Where, in a pros-
ecution for murder, defendant is convicted of manslaughter in
the first degree, an alleged erroneous instruction relating sole-
ly to the crime of murder will not be considered as a ground
for reversal.

5. **TRIAL.—Instructions—Applicability—Refusal.** It is not reversi-
ble error to refuse to give instructions requested by defendant,
where the same are not applicable to the issues.

*Appeal from Superior Court, Okmulgee County;*

*R. E. Simpson, Judge.*

Hector Lady was convicted of manslaughter in the first degree and he appeals. Affirmed.

*A. L. Beckett,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J. This is an appeal from the superior court of Okmulgee county wherein, on the 22d day of February, 1918, defendant, Hector Lady, was sentenced to serve a term of four years in the state penitentiary for the crime of manslaughter in the first degree for killing one Silas Grier in said county on the evening of the 24th day of December, 1917, near the town of Preston in said county. Two grounds of reversal are relied upon (1) The alleged insufficiency of the evidence to sustain the conviction; (2) alleged erroneous instructions given by the trial court over the objection and exception of defendant.

We think there is ample evidence in the record from which the jury was authorized reasonably to conclude that defendant killed deceased, Silas Grier, by shooting him in the head with a pistol. The killing occurred on a public highway near the town of Preston. in Okmulgee county, on Christmas Eve, 1917. It appears that defendant and deceased, who were both negroes, had known each other for several years, and apparently up until the afternoon or late evening of the day of the killing had been on friendly terms. On that afternoon defendant and some other negroes were shooting craps at the home of Buster Mayes in the town of Preston. Defendant had been winning, and was

accused by others in the game of shooting or playing with
loaded dice; according to the state's witnesses, deceased ap-
peared upon the scene about the time the controversy arose
as to the loaded dice, and remarked in substance that shoot-
ing with loaded dice was unfair, and that a person could
not win, or had no right to win, with loaded dice.

Shortly after the game broke up, and defendant and
one Tobe Toston, who had been playing in the game, started
away in a single buggy, driving a mule belonging to de-
fendant to a place a distance of about 4 miles north of
Preston, where some negroes were giving a supper and
dance. While at the outskirts of the town of Preston, de-
fendant stopped at the home of a negro woman by the name
of Isom, who had a sick boy; Toston waiting in the road in
the buggy until defendant visited with the Isoms for from
30 minutes to an hour (the exact time that defendant stay-
ed at Isom's being in controversy.)

After defendant left Isoms, he returned to the buggy,
and he and Toston started driving along the public road
in a northeasterly direction to the place where the supper
and dance was to be given. Toston testifies that they had
driven approximately 200 or 300 yards along this public
road when defendant, who was sitting on the right side of
the buggy, drew his pistol, and began firing to the right of
him. Toston's testimony in regard to defendant's shoot-
ing is as follows:

"Q. Go ahead, and tell what occurred. A. So he
got in on the right, after we stopped to see the sick man
at the creek, and in about 200 or 300 yards from where we
stopped, in going along the road, when we got there, he
stopped, and pulled out his pistol, of course, and shot twice.
When he fired first, I didn't see anything, but when he
made the second shot, I discovered something on the ground,

between the flash of the gun—I don't know what, man, or hog, or dog. He drove on a little piece further, and shot back again. I told him, 'Don't be shooting that way; might be people there.' He says, 'I believe I seen somebody back there.' That's all he said; went on along the road for awhile.

"Describe the place and the ground, with reference to whether there was timber. A. There was a small tree stood a little further northeast, and a large tree stood kind of southeast, where the shooting was at that place; that is where he shot him.

"Q. Did you proceed, then, on to the supper? A. I and him went to the supper.

"Q. What occurred? A. He got a quarter of a mile from there, where he shot first, pulled out his pistol, and shot twice and reloaded the pistol.

"Q. Anything said there about the shooting? A. After we got to the supper, Buster Mays came up between three-quarters of an hour, or about there, and told me that this man, 'Rabbit,' was killed down there; found him in the road which caused me to think that he shot him because I was in the buggy. He said the officers was coming up there to arrest us. He suspicioned Hector, and Hector come to me and told me, 'If they ask you where the shooting was you say that was between a mile and three-quarters from town; that's the way he spoke to me; that's the way it was spoke.

"Q. Was there anything said at that time, or any other time, if you were asked about the shooting, to tell he shot in the air? (To the Court) Just trying to refresh his memory.

"By Mr. Beckett: To which we object as leading.

"By the Court: Sustained.

"Q. Was there anything said any other time about this shooting by this defendant?

"By Mr. Beckett:   Objected to as leading.

"By the Court:   Overruled.

"By Mr. Roland:   Exception.

"A.   I was going to ask you a question.

"Q.   What was it?   A.   If you meant at the dance? If he got in jail, to tell the shooting was between a mile and three-quarters from town, he shot; but he shot straight up.

"Q.   He told you that at the dance?   A. Told me that at the dance.   Buster Mays came and told me this man was found dead; the officers was coming, tracing this buggy, because they thought we done it.   When he got there, Hector told me, 'I am going home,' wanted me to go home.   'I am going home with old man Polks folks when they go.'   'I sure hate it,' he says, 'me and Rabbit was good friends,' that's what he said.   'I hate that Rabbit got killed; me and him was good friends.' "

Defendant took the witness stand in his own behalf, and admitted firing some shots along the public road that night on his way to the dance, but testified he was at least one-half mile from the Isom home before he fired the first time.   If defendant's testimony was true, this would put him a considerable distance northeast of where the body of deceased was found.

It is apparent from the record that the evidence is in conflict as to where the shooting took place, but it was the exclusive province of the jury to settle such conflicts.   If the evidence on the part of the state was to be believed, the jury was authorized to conclude that defendant fired the shot that killed deceased.   The testimony of the witness Toston and other circumstances lead to no other conclusion than that defendant shot deceased while firing his

pistol from his buggy while driving along the public highway.

Section 2577, Revised Laws 1910, provides:

"Any person who willfully discharges any species of firearm, airgun or other weapon, or throws any other missile in any public place, or in any place where there is any person to be endangered thereby, although no injury to any person shall ensue, is guilty of a misdemeanor."

Homicide is defined to be manslaughter in the first degree, under section 2320, Revised Laws 1910:

"First. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor."

Under section 2577, *supra,* it was a misdemeanor for defendant to discharge his pistol in a public place, and under section 2320, *supra,* if defendant had no premeditated design to kill any person by discharging his pistol in a public place, and he did discharge it in such a place, and the death of some person ensued from such act, although without any design on defendant's part, such killing would be manslaughter in the first degree.

Therefore, under the foregoing statute and the evidence on the part of the state in this case, it being disclosed by the record that defendant discharged his pistol in a public road, and the jury being authorized to conclude that by such act on the part of defendant deceased was killed, without any design to effect the death of deceased by defendant, it must be held, if it be conceded that the public road was a public place, within the meaning of section 2577, *supra,* that the evidence is sufficient both in law and in fact to sustain the conviction.

Secondly, it is contended that the court erred in giving the following instructions, numbered 10 and 11:

"You are instructed that any person who willfully discharges any species of firearm, airgun, or other weapon in any public place, or in any place where there is any person to be endangered thereby, although no injury to any person shall ensue, is guilty of a misdemeanor."

"You are therefore instructed that, if you believe and find from the evidence in this case, beyond a reasonable doubt, that the defendant, Hector Lady, at and in the county of Okmulgee and state of Oklahoma, on the date alleged in the information, unlawfully and wilfully, while riding along the public road, shot off his pistol, and you further believe and find from the evidence, beyond a reasonable doubt, that the deceased, Silas Grier, was killed by the discharge of said pistol in the hands of the said defendant, Hector Lady, although without any intention, or premeditated malice or design on the part of the said Hector Lady, to shoot and kill the said Silas Grier, and you further believe and find, beyond a reasonable doubt, that said act was willfully and unlawfully done, in violation of the law making it a crime to shoot upon the public highway or public place, then, in that event, you will find the defendant guilty of manslaughter in the first degree, and so say by your verdict. On the other hand, if, after a careful and fair consideration of all the evidence in this case, you have a reasonable doubt of the guilt of the defendant, you will give him the benefit of such doubt, and acquit him."

In substance, it is contended that the giving of the foregoing instructions was error, because: (1) The public road upon which the shooting took place was not a public place within the meaning of section 2577, *supra;* (2) there is no evidence in the record to support the giving of such instructions.

As to the second contention, it is only necessary to say that the evidence upon the part of the state discloses that defendant fired certain shots from his pistol along the public road, and that the shooting was willfully and intentionally done by defendant. Under such circumstances, if death resulted from the act of shooting, the crime was manslaughter in the first degree, within the definition contained in the first subdivision of section 2320, *supra.*

Nor do we believe there is any merit in the contention that the highway upon which the shooting by defendant took place was not a public place, within the meaning of section 2577, *supra.* The undisputed evidence shows that such highway was a public road long since opened for travel, leading from the town of Preston in a northeasterly direction; that it was a place where the public had a right to go and to be at all hours of the day, and while the evidence shows that such highway was one which was not as frequently worked and traveled as others in that neighborhood, nevertheless it was in no sense a private road or place, but was one which was open at that time, and had been open for many years, for public uses and purposes, and in the opinion of this court was a public place within the meaning of section 2577, *supra.* Taking such view of the law, it was not error for the trial court to give instructions Nos. 10 and 11, supra, complained of.

Further, it is contended that the trial court erred in giving instruction No. 13, as follows:

"Homicide committed with a design to effect death is not the less murder because the perpetrator was in a state of anger or voluntary intoxication at the time."

This instruction is alleged to have been prejudicial

to defendant, because there was no evidence to support the giving of same. In view of the fact that defendant was convicted of the crime of manslaughter, and the instruction complained of relates solely to that degree of felonious homicide defined to be murder, it cannot be said in this case that defendant was prejudiced by the giving of such instruction.

It is also contended that the trial court erred in refusing to give certain instructions requested by defendant. These instructions relate to the crime of manslaughter in the second degree, and to excusable homicide. The instructions were properly refused. There is no evidence in the record which tends to reduce this killing to that grade of felonious homicide defined to be manslaughter in the second degree; neither is there the slightest evidence tending in any way to excuse the killing. Under the state's evidence, the crime committed was either murder or manslaughter in the first degree. The defense interposed was an alibi, and the trial court fully instructed upon all theories of the case of which there was any evidence to support. The instructions given fully covered the law of the case, and were as fair to defendant as the evidence warranted.

After a careful consideration of the record in this case, the conclusion is reached that defendant had a fair and impartial trial, and that the judgment of the superior court of Okmulgee county rendered herein, sentencing defendant to serve a term of four years' imprisonment in the state penitentiary, should be affirmed; and it is so ordered.

DOYLE, P. J., and ARMSTRONG, J., concur.