## FREEMAN *v.* STATE.

### Opinion delivered October 10, 1927.

1. HOMICIDE—WHEN MALICE IMPLIED.—Where a killing is done with a deadly weapon, the law implies malice if no circumstances of mitigation, justification or excuse appear to have existed at the time of the killing.

2. CRIMINAL LAW—WHEN TESTIMONY UNDISPUTED.—Testimony can be said to be undisputed only when reasonable minds can draw but one conclusion from it.

3. HOMICIDE—BELIEF OF DANGER.—Where a killing is done because the slayer believes he is in great danger, but the facts do not warrant such belief, the crime may be murder or manslaughter, according to the circumstances, even though the killing is not done in a fit of passion.

4. HOMICIDE—MANSLAUGHTER.—Where a slayer, though acting in self-defense, was not free from blame, his crime may be manslaughter.

5. HOMICIDE—MANSLAUGHTER—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to support a verdict finding defendant guilty of manslaughter, as against his plea of self-defense.

Appeal from Sebastian Circuit Court, Greenwood District; *J. Sam Wood,* Judge; affirmed.

*Holland & Holland,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

HART, C. J. Vol Freeman was convicted before a jury of the crime of manslaughter, and his punishment was fixed at five years in the penitentiary. The case is here on appeal. The only assignment of error relied upon for the reversal of the judgment is that the evidence is not legally sufficient to support the verdict.

The record shows that Frank Pompey was killed while working in a mine at Jenny Lind, in the Greenwood District of Sebastian County, Arkansas, and Vol Freeman took charge of his home and locked it up. On the next night, which was February 17, 1927, the defendant went with Frank Petty and his wife to the residence of the deceased for the purpose of allowing Mrs. Petty to rest awhile. While they were in the house, Abe Alexander came in, and Freeman asked him what he was doing there. Alexander replied that he had as much right there as Freeman. Petty and his wife went out in another room, and in a few minutes heard a pistol shot. They went back in the room, and found Alexander lying on the floor with a bullet wound over his heart. Freeman admitted that he had shot and killed him with a pistol, but said that Alexander was trying to shoot when he shot and killed Alexander. Freeman said that he was down on his knees when he fired the shot. Alexander died in a few minutes. The killing occurred between half past ten and eleven o'clock, and the sheriff of the county was called, and found Alexander lying on the floor, dead. There was a stream of blood from his mouth extending about five or six feet down the floor

from where the body lay.   He found a blackjack with the letter "F" on it lying about four or five feet from Alexander's head.   There was a small automatic pistol with one unexploded shell in it under Alexander's hips.   Alexander was dressed in his underwear, a pair of overalls and house-slippers.   The undertaker who took charge of the body said that the wound just clipped the heart and ranged down.   He found the bullet under the skin in the right shoulder.

According to the testimony of Frank Petty, he first saw Alexander when he opened the door and came into the house.   Freeman asked him who had broken into the house.   It seemed that the house had been entered since Freeman had locked it up, after the death of Pompey.   Alexander replied that he had.   Freeman said, "You've got no business breaking into this house."   Alexander replied, "I got as much right in here as you have."   Alexander then stepped back and ran his hand in his bosom.   Petty grabbed his wife, and went into the kitchen.   He heard some scrambling around, and then a pistol shot.   "I did not see Freeman fumble around a trunk or get a pistol after we went in the house."   Witness saw a blackjack in the room where Alexander was killed.   He did not see it before the killing.   Freeman said that Alexander was trying to shoot him when he shot Alexander.   Freeman said that he was down on his knees in the corner of the room when he fired the shot.

Another witness for the State testified that Alexander was lying on his back, with his right thumb hooked over the bib of his overalls, and his other hand down at his side.   There was nothing in either hand.

According to the testimony of the defendant, he had known Abe Alexander for twelve or fourteen years, and they were friends.   Alexander, the defendant and another person carried Pompey out of the mine when he was killed.   Pompey lived by himself, and had told the defendant that, if he was killed while working in the mine, he wanted him to take charge of his house.   After the death of Pompey, the defendant fastened up his house and, on the next night, went there with Frank Petty and

his wife. He saw that the house had been broken into and entered during his absence. He saw that a trunk had been broken into and some papers scattered over the floor. When the defendant saw that the house was torn up, he got a pistol which had belonged to Pompey and put it in his pocket. While walking around the room, he heard somebody step on the front porch. He came right in to the defendant and said, "What in the hell are you doing here?" The defendant said, "Looking around. Somebody has burglarized the house—do you know who it was?" Alexander said, "Yes, it was me and Butch." The defendant replied, "Nobody had any business burglarizing the house." Alexander then went for his bosom with his hand, and the defendant stepped back. Alexander commenced striking at him, and the defendant threw up his hands. Alexander hit him with something that deadened his hand. Alexander then struck the defendant on the shoulder, and got him backed up in the corner of the room. Alexander hit him over the head with something that knocked him down. Alexander was right over him, and drew back as if to strike the defendant again. The defendant shot him. Alexander scrambled around a little, and fell over on the floor and died.

Another witness for the defendant identified the blackjack found in the room where the body of the deceased was lying as one that belonged to Alexander.

Mrs. Frank Petty was a witness for the defendant, and substantially corroborated the testimony of her husband.

The killing being done with a deadly weapon, the law implies malice where no circumstances of mitigation, justification or excuse appear at the time of the killing.

The killing was the result of a sudden quarrel between the defendant and Alexander. While the jury might have found from the evidence that Alexander attacked the defendant with the blackjack and that the defendant shot him after Alexander had knocked him down, and that the killing was therefore done in self-defense, still it cannot be said that the testimony of the

defendant and his witnesses was undisputed. Testimony can only be said to be undisputed when reasonable minds can draw but one conclusion from it. The jury may have accepted a portion of this evidence as true and rejected the other portions of it as untrue. They may have concluded that the defendant shot the deceased under the belief that he was about to be assaulted with a deadly weapon, but that he acted too hastily, and was therefore not justified in taking life under the circumstances. Where the killing is done because the slayer believes he is in great danger, but the facts do not warrant such belief, it may be murder or manslaughter according to the circumstances, even though the killing is not done in a fit of passion. When the slayer, though acting in self-defense, was not himself free from blame, the crime may be only manslaughter. *Allison* v. *State,* 74 Ark. 444, 86 S. W. 409.

According to the evidence for the State, Alexander was shot over the heart, and the bullet ranged downward. The jury might have found that the defendant was not telling the truth when he said that Alexander had knocked him down before he shot him. One of the witnesses for the State testified that Alexander was found lying with his right thumb hooked over his overalls bib and the other hand at his side. There was nothing in either hand. The jury might have found that the defendant shot Alexander while he was reaching his hands in his overalls, as testified to by Frank Petty, but that he shot too hastily. It might also have found that the defendant shot Alexander while they were scuffling around, and that Alexander was merely striking the defendant with the little pistol which was found under his hips, and was not attempting to kill him or do him serious bodily harm. In any event, it cannot be said that reasonable minds could only come to the conclusion that the defendant shot and killed the deceased in order to save his own life or to prevent great bodily harm to himself. It might have found that the parties became angered at each other and entered into a voluntary fight. It is true that the defendant was injured to some extent in the fight, but he was

not seriously hurt. When all the attendant circumstances are considered in the light of each other, it cannot be said that the testimony of the defendant is undisputed that he shot the deceased after he had been knocked down on the floor and before he had gotten up. It will be remembered that the defendant testified that he got the pistol after he had entered the house because he saw that the house had been burglarized. On the other hand, Frank Petty testified that he did not see the defendant get the pistol after they entered the house. The jury might have found that he already had it in his pocket, and, as above stated, that he either became angry at Alexander and voluntarily entered into a fight with him or that he drew his pistol and shot Alexander too hastily, and was not therefore justified in the eyes of the law.

The evidence was legally sufficient to support the verdict, and the judgment will therefore be affirmed.