## DEE HIGDON v. STATE.

No. A-8942. Nov. 22, 1935.
(52 Pac. [2d] 103.)

Toby Morris and Walter Hubbell, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.  The plaintiff in error, hereinafter referred to as the defendant, was convicted of manslaughter in the first degree, and sentenced to be imprisoned in the State Penitentiary for a term of four years.

Bob Duncan, called on behalf of the state, testified:

"I was living at Walters, Okla., September 15, 1933, and attended a dance given by the American Legion at the hall; I saw the defendant at the hall and had some conversation with him; I noticed he was drinking.  I drove up town for a while and came back to the hall; I saw the deceased Bob Kinney fall across the entrance of the door; the deceased tried to get up but could not; I would not be positive, but from the position I was in it looked like Dee Higdon hit him; I saw the deceased fall and he could not get up."

Mrs. Kyle Hoosier, testifying for the state, stated:

"I was in Walters the night of September 15, 1933, and attended a dance sponsored by the American Legion; I saw Bob Kinney, the deceased, that night; also saw Dee Higdon; the first time I saw Dee Higdon was between 9 and 10 o'clock; he was in front of the Pass Time Club; I was sitting out in front of the door and had a clear view; Dee Higdon was arguing with Mr. Thompson about going with Higdon's first wife; I saw Higdon talking with Ben Hutchens; I heard him tell him not to leave, that he wanted him to stay and listen to what he had to say; about that time the deceased, Bob Kinney, came up, and defendant asked Bob if he was tough, and Bob mumbled a

groan; Kinney's hands were hanging down; the defendant told Kinney he was tough, and hit Kinney about that time. Bob Kinney never did say a word to the defendant; when the defendant hit Kinney he fell to the sidewalk; he tried to pull himself up, and asked the defendant not to do that again; the defendant hit the deceased again below the ear on the neck; I could see and hear the licks that were struck; when the defendant hit the deceased the second time it looked like it lifted him off the sidewalk in the air, and deceased came down on his head and lay there perfectly still; he was unconscious, and I saw blood coming out of his ears or mouth; the defendant asked several times how he liked it, and if anybody else wanted any of it; Ben Hutchens helped the deceased, Bob Kinney, away, and that was the last time I saw the deceased.

"Following this, Dee Higdon walked into the dance hall and started trouble with my husband; I walked in between them; the defendant sent the Coats boy and asked my husband where the deceased was, and the defendant and the Coats boy passed a lick or two; the Coats boy caught Dee by the front of his shirt and knocked him down, and the night watchman, assisted by other parties, helped the defendant into a car and took him away."

Ben Hutchens testified in substance to the same facts as did Mrs. Hoosier. Several witnesses were put on the stand who testified to the conduct of the defendant, and that he was drunk and rowdy and trying to start a fight with several people; he would first ask them if they were tough, and then boast and brag about how tough he was.

The defendant, testifying in his own behalf, testified as to the condition of his health, and stated he had been suffering with headaches, first and last, for some time, and that he had been taking barbatol tablets to relieve his headache. The defendant admitted he had at least two drinks before the trouble; that he went to a Mr. Bailey's to get the drinks; he did not remember drinking any 3.2 that evening or night; he remembered having seen the de-

ceased, Bob Kinney, along in front of Charley Finchers' place of business, and deceased asked him if he had seen Jess Coats. "I told him I had not," and defendant stated from the time he answered that question "Up until George Beach came to my home I do not remember anything that took place. I had no reason at all for striking Bob Kinney. I do not remember hitting him. I was beat up that night, but I do not know who did it. George Beach told me that Bob Kinney was dead."

The only defense the defendant makes is that he was unconscious and did not know what he was doing from the time he met the deceased on the street, when the deceased asked him if he had seen Jess Coats, until some time after the killing he claims that his mind was a blank. The foregoing is the substance of the testimony both for the state and the defendant.

Six errors alleged to have been committed by the trial court in his case have been assigned as grounds for reversal.

The defendant in his brief argues all of the assignments together under one proposition, and alleges as grounds for reversal of the judgment, first, that the amended information upon which the defendant was prosecuted and convicted was filed the day of the trial, "and, charged the defendant with the crime of manslaughter by killing while engaged in the commission of a misdemeanor, to wit: being drunk on the streets of the city of Walters, and manslaughter by unlawfully, wrongfully, knowingly, and feloniously and in the heat of passion and in a cruel and unusual manner, striking and beating the deceased with his fist without a design to effect death."

The record in this case shows the defendant was boasting about being tough, and was quarrelsome, and playing

the role of a bully, around and near where the Legion dance was being held. The information in this case charged the defendant with a crime, and the defense of the defendant amounts in substance to a confession of wrongful killing. While it is evident the defendant did not intend to kill the deceased when he struck the blow he did, his actions indicating he only desired to play the bully by hitting a few of the boys in or near the dance hall, his plea of having no recollection of what took place or what he did from a short while before the killing when he met the deceased, and told the deceased, when asked if he had seen Jess Coats, that he had not, up until some hours after the killing, evidently was not believed by the jury, nor would any unbiased jury believe such statement, in view of the testimony in the record as to the actions of the defendant prior and subsequent to the killing. His actions immediately after the killing in trying to raise a difficulty with others in the dance hall, shows he was drunk, and all the testimony shows he was intoxicated to such an extent that he wanted to raise a row with any one that came along. He was fortunate the jury took a liberal view of his case in fixing the punishment at four years.

In this case, the court fairly and correctly advised the jury as to the law applicable to the facts. The defendant was accorded a fair and impartial trial, and without extending this opinion further, we hold he had a fair and impartial trial, and that there are no errors in the record warranting a reversal. The judgment is affirmed.

EDWARDS and DOYLE, JJ., concur.