ROY HODGES v. STATE.

No. A-9401. Dec. 16, 1938.

(85 P. 2d 443.)

Bob Howe, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., of Oklahoma City, for the State.

BAREFOOT, J. Defendant, Roy Hodges, and C. F. Daley were charged jointly with the crime of murder. A severance was had and defendant was tried separately, convicted of manslaughter in the first degree, and sentenced to serve seven years in the penitentiary, and has appealed.

The charging part of the information was as follows: "did beat and strike the said Jasper B. McAfee on and about the head and body, then and there and thereby inflict upon the body and head of said Jasper B. McAfee by beating and striking, as aforesaid, certain mortal injuries of which mortal injuries so inflicted, as aforesaid, the said Jasper B. McAfee did instantly die, as was intended by said defendant."

It is contended by defendant: (a) That the evidence revealed that deceased died because of a broken neck, and that therefore there was a fatal variance between the proof and the allegations contained in the information; (b) that there is absolutely no evidence that deceased died from the effect of striking, beating, bruising, or blows upon the body and head, as charged in the information as being mortal wounds.

The evidence as shown by the record was that a man by the name of Fred Ward was an oil field worker in Capitol Hill, Oklahoma City. That on the 9th day of September, 1936, one R. C. Smith, who was a friend of his, came to his home. That soon thereafter they went to the business district of Capitol Hill, where he left some shoes to be repaired. They went to a resort to get a bottle of beer, and there met C. F. Daley, whom Mr. Smith knew. About 4 o'clock they again met Mr. Daley and Roy Hodges, the defendant, whom Mr. Smith knew and was wanting to see, with reference to helping him to find work in the Capitol Hill oil field. The four parties, to wit, Ward, Hodges, Daley and Smith, got in Hodges' car and drove out southwest of Capitol Hill. While out there they all took a drink of whisky from a bottle belonging to defendant, and which contained about one-fourth of a pint. They returned to a barbecue stand, located at 3319 South Robinson Avenue, arriving there about 6:30 p. m. They all got out of the car and seated themselves at one of the tables on the outside and drank several bottles of beer. While they were seated there an elderly man named Jasper B. McAfee, about

60 years of age, and weighing about 130 pounds, came up and seated himself at a table just north of the parties named. He was sitting on a bench leaning his head on the table when one of the parties, C. F. Daley, went to where he was and turned over the bench on which Mr. McAfee was sitting. There was no cause for this, and Mr. McAfee got up and laid down on the bench. It was but a few minutes until the defendant, Roy Hodges, went over and pushed the bench over and Mr. McAfee again fell to the ground. When he got up he came over to the table where the others were sitting and protested about being interfered with, saying: "I am an old man and I try to be all right, and I don't like to be treated this way." He never at any time made any demonstration in any way toward defendant or any of the parties, and the witness Fred Ward spoke to defendant, saying: "I told him to leave him alone, he was an old man and wasn't bothering anybody." About this time a young man named Jack Adair, who worked at the barbecue stand, came up, and defendant slapped Mr. McAfee with his hand and knocked him up against a post, and he staggered and fell against the ground. The witness Jack Adair asked defendant not to have any trouble, and defendant told him to go on "or he would whip hell out of me," to which witness replied: "If I can't handle you I will get some one that can." And he started toward the car, defendant following him, and he got off the fender of the car and knocked defendant down. The deceased was picked up and laid on the bench, and was afterwards taken away in an ambulance. He died as a result of being struck by defendant. An examination by the undertaker and an interne revealed that his neck was broken, and this was the immediate cause of his death. All of the parties left the scene of the difficulty. The defendant was found the next morning at the home of a friend near Britton, north of Oklahoma City. His car was found in the woods some distance from the house. The witnesses R. C. Smith and Fred Ward did not learn of the death of deceased until the next morning when they saw an account in the news-

.papers, and they immediately reported to the officers, and were witnesses in this case. The defendant did not testify.

The above statement is necessary in order to consider the question of variance between the allegations of the information and the evidence in the case. It will be noted that defendant was convicted of manslaughter in the first degree. The court, in his instructions, properly eliminated the question of murder, and only submitted manslaughter in the first degree and second degree. The statute defining manslaughter in the first degree, Oklahoma Statutes 1931, § 2223, 21 Okla. St. Ann. § 711, provides:

"Homicide is manslaughter in the first degree in the following cases:

"1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

"2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

"3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."

It has been universally held by this court that the charging of the greater degree includes all of the lower degrees of the same crime. Jones v. Territory, 4 Okla. 45, 43 P. 1072; Rhea v. Territory, 3 Okla. Cr. 230, 105 P. 314; Byars v. State, 7 Okla. Cr. 650, 126 P. 252.

The defendant was charged with the crime of murder. It was not only proper, but the duty of the court, under the facts, to submit to the jury the question of manslaughter in the first and second degree. The evidence revealed that deceased was killed by defendant while engaged in the commission of a misdemeanor, as clearly defined by section 1 of the above quoted statute. There was no action on

the part of deceased which showed any aggression on his part.  He mildly protested when he was thrown from the bench by defendant, and when he did so defendant immediately hit him in the face, and knocked him against a post, and he fell to the ground, and as a result of this his neck was broken and he died.  There is nothing in the evidence to show that defendant intended to kill deceased. He did not know him, and there was no cause to strike him.  It seemed to be defendant's idea of having fun, and especially when he was evidently under the influence of liquor.  But the law does not sanction fun of this character for it says a person is legally responsible for the natural and necessary consequences of his own unlawful act, and under the statute of which defendant was convicted, it is not necessary that he should have intended the death of deceased.  Tyner v. U. S., 2 Okla. Cr. 689, 103 P. 1057.

Defendant relies upon the case of Elliott v. State, 4 Okla. Cr. 224, 111 P. 820, 140 Am. St. Rep. 683, for a reversal of this case.  While we think there is a clear distinction between this case and the case at bar, this court in the case of Tiger v. State, 54 Okla. Cr. 202, 16 P. 2d 889, had occasion to refer to the Elliott Case, and while the same was not overruled, the doctrine as announced therein was not followed, and it is our opinion that the reasoning in the Tiger Case is more sound, and is in accord with the modern and better reasoned cases.  The court, in that case, said:

"The only contention made is that the testimony does not sustain the charge; that, while there is testimony that defendant struck Kelly with his fists and knocked him down against the stove and that some time in the fight kicked him, there is no proof of the allegation of an assault with a heavy, dangerous, blunt instrument.  Defendant relies for a reversal on the case of Elliott v. State, 4 Okla. Cr. 224, 111 P. 820, 140 Am. St. Rep. 683.  It is not contested that Kelly met his death in a fight with defendant; that death was caused either by defendant striking deceased with his fist, causing him to fall and sustain the

wounds from which he died, or by kicking him and causing the wounds, or by striking him with some weapon not disclosed. As to the cause of death, the physician who performed the autopsy testified deceased had been struck with some blunt instrument; that in his opinion the injuries on the face could not have been caused by a rubber-heeled shoe.

"The only question then is, Is there a fatal variance between the charge and the evidence? The courts of several of the states have gone to an extreme length in holding a variance fatal. Some of these opinions have reversed cases on a variance on some point or some purely technical matter which by the later and better reasoned cases and the more modern rule would be brushed aside as immaterial. This court has followed the later sensible rule as stated in Woods v. State, 22 Okla. Cr. 365, 211 P. 519, and again asserted in Brashears et al. v. State, 38 Okla. Cr. 175, 259 P. 665. These later cases define a variance as an essential difference between the accusation and the proof and that a material variance arises only when there is such a difference between the proof and the charge that an acquittal of the defendant would be no bar to a further prosecution for the same offense. The charge that deceased met his death by wounds inflicted by a blunt instrument is sustained by the proof. It is evident that the county attorney did not at the time of filing the charge or at any subsequent time know what instrument was used. The proof very strongly indicates that deceased was knocked down and kicked in the head by defendant, which kicks caused the fractures of the skull testified to. If defendant has been acquitted under this charge, he certainly could not have been again prosecuted for causing the death of deceased in some other manner."

As stated in that case it is certain that the defendant was in no way misled by the charge in the information in this case. There is no question but that the striking of deceased by the defendant was the direct cause of his death, even though it does not reveal whether the broken neck was the result of the striking, or the fall against the post or falling to the ground. There is no question but that a conviction or acquittal of defendant would be a bar to a further prosecution for this offense. Gaunce v. State,

22 Okla. Cr. 361, 211 P. 517; Lady v. State, 18 Okla. Cr. 59, 192 P. 699; Higdon v. State, 58 Okla. Cr. 224, 52 P. 2d 103; Woods v. State, 22 Okla. Cr. 365, 211 P. 519; Kercheval v. U. S., 5 Cr., 36 F. 2d 766; Tiger v. State, 54 Okla. Cr. 202, 16 P. 2d 889.

It is unfortunate that death resulted when there was no design upon the part of the defendant to effect death, but the statute provides that it is manslaughter in the first degree "when perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor."

Finding no error in the trial of this case, we are of the opinion that the judgment of the district court of Oklahoma county should be affirmed and it is so ordered.

DAVENPORT, P. J., and DOYLE, J., concur.