**Glen Earl WOOD, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defend-
ant in Error.**

**No. A–15660.**

Court of Criminal Appeals of Oklahoma.

May 26, 1971.

Rehearing Denied July 6, 1971.

Don Anderson, Public Defender, Oklahoma County, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Plaintiff in error, Glen Earl Wood, hereinafter referred to as defendant, was convicted by jury verdict of Murder, with punishment fixed at life imprisonment by the District Court of Oklahoma County, Case No. CRF–69–1470. Judgment and sentence in accordance with the verdict was imposed on October 31, 1969, and this appeal perfected therefrom. Defendant was represented at his trial and on appeal by the public defender.

Specifically, defendant was charged with hitting Donald Jewell Pope on the head with a 2x4 board in the late evening of June 30, 1969, causing the death of Pope on July 2, 1969. The circumstances involved an encounter between defendant and his two companions and several people at an Oklahoma City Tavern and an ensuing fight involving a dozen or so people, described by witnesses as "mass confusion" and a "madhouse".

The evidence establishes defendant with Darrell Junior Stevens and Ronnie Koeninger were refused admittance to the tavern by an employee, Alta Eva Beaver, because she thought they were under age and intoxicated. There was some disagreement and she summoned the tavern manager, Kenneth Horton, who argued with them before he got them to leave. Horton then followed the trio down the street with seven or eight people, including Pope, from the tavern. A serious fight developed in the street involving all of these people during which a gun was fired.

It is difficult to reconstruct the exact series of events from the participants limited view of the entire encounter, although it appears that the initial blows were exchanged between Stevens and one of the men who ran after them from the tavern. Horton, Pope, and another man went after defendant who picked up a three foot, 2x4 board which he swung at the men hitting Pope, whose foot slipped, on the back and/or head before Pope fell and hit the cement. Horton produced a .22 caliber revolver during the encounter with which he threatened defendant and fired one or two shots. One witness testified two other shots were fired earlier. Defendant testified he picked up the board to use against his attackers, one of which had a black jack and who backed him across the street. Defend-

ant admitted hitting Pope after "Pope got to me first."

The medical evidence established that Pope died from brain damage from a skull fracture caused by a sufficient blow to the head which could result from a fall or·· blow from a board.

The only issue raised on appeal is whether there was sufficient evidence to prove premeditated design necessary to constitute murder. Defense counsel offers no authorities in support of his contention that the evidence only proves manslaughter, but the seriousness of the crime requires inquiry.

■■■■ Homicide is murder when perpetrated with a premeditated design to effect death; or without premeditated design to effect death when perpetrated by an act imminently dangerous to others envincing a depraved mind or when perpetrated by one engaged in commission of a felony. 21 O.S.1961, § 701. Premeditated design to effect death is not required to constitute manslaughter, and homicide is first degree manslaughter if perpetrated in a heat of passion by means of a dangerous weapon if the circumstances do not constitute excusable or justifiable homicide. 21 O.S. 1961, § 711.

In the early case of Tyner v. United States, 2 Okl.Cr. 689, 103 P. 1057 (1909), regarding the perpetration of homicide, this Court held:

> "If the act is attended with probably mortally dangerous consequences to the deceased or persons generally, and death should ensue, the crime is murder or manslaughter, depending upon the degree of deliberation." 2 Okl.Cr., at 693, 103 P. at 1059.

■■■■ It is the general rule that passion resulting from fright or terror may be sufficient to reduce a homicide from murder to manslaughter and such a killing may be closely akin to a killing in self-defense. Kinard v. United States, 68 App.D.C. 250, 96 F.2d 522. A homicide may be reduced from murder to manslaughter where the killing was done because the slayer believed that he was in great danger, even if he was not warranted in such belief or where the slayer although acting in self-defense was not himself free from blame. Freeman v. State, 174 Ark. 1035, 298 S.W. 333; 40 C.J.S. Homicide § 42.

In Hodges v. State, 65 Okl.Cr. 277, 85 P.2d 443 (1938), the defendant was charged with murder and a manslaughter conviction was affirmed where he struck the deceased who fell, hit his head, and died. This Court observed:

> "There is nothing in the evidence to show that defendant intended to kill deceased." 65 Okl.Cr., at 281, 85 P.2d, at 445.

In Coslow v. State, 83 Okl.Cr. 378, 177 P.2d 518 (1947), the death was caused by a blow sustained in a fight between the defendant and deceased in a tavern. This Court said:

> "We can only conclude from the evidence that defendant did not intend to kill [deceased] at the time he struck him. However, the statute does not require that one should intend to kill under the manslaughter statute." 83 Okl.Cr., at 386, 177 P.2d, at 522.

In still another tavern brawl which resulted in death, this Court held in Fry v. State, 91 Okl.Cr. 326, 218 P.2d 643 (1950):

> "The record is entirely lacking as to premeditation or intentional design to effect death, and therefore did not constitute murder." 91 Okl.Cr., at 333, 218 P.2d, at 648.

In Tarter v. State, Okl.Cr., 359 P.2d 596, where defendant shot the deceased, this Court was of the opinion that premeditated design to kill may have been lacking and that the killing was in the heat of passion by means of a dangerous weapon which would constitute manslaughter, not murder. This Court ruled that:

> "[W]hether there is any evidence tending to reduce the degree of the homicide

from murder to manslaughter, the trial court should give the defendant the benefit of any doubt. * * *"

"The homicidal act must be done with a premeditated design to effect the death of the person killed to constitute murder, and the premeditated design to effect death is the material element of the offense, and must exist at the time the homicidal act is committed, or there is no murder."
" * * *

"In order for the taking of human life to constitute murder by reason of the perpetrator being engaged in the commission of a felony, the precedent felony must constitute an independent crime not included within the resulting homicide." 359 P.2d, at 597.

■ We are persuaded that the evidence in this case does not establish a premeditated design to effect death nor death resulting from the commission of a felony. Rather the evidence proves homicide perpetrated in a heat of passion by a dangerous weapon which would constitute manslaughter. There is no proof defendant had a motive, sought out deceased, or even knew him. There was clearly no purposeful intent of the defendant to kill the deceased and absent proof of premeditation or intentional design the necessary material element to convict for murder is lacking.

Accordingly, the judgment and sentence is hereby Modified from a Life sentence for Murder, to a term of Forty (40) Years for First Degree Manslaughter. The District Court of Oklahoma County is directed to correct the judgment and sentence to reflect the modification herein, and as so Modified, the judgment and sentence is Affirmed. Modified and affirmed.

BRETT, J., concurs.

BUSSEY, P. J., concurs in result.