## IVAN BROWER v. STATE.

No. A-4195. Opinion Filed Jan. 19, 1924.
(221 Pac. 1050.)

(Syllabus.)

1. **Prosecuting Attorneys—Representative of the Public and Quasi Judicial Officer.** A prosecuting attorney in a criminal case represents the public; he is a quasi judicial officer, charged as much with the duty of seeing that no innocent man suffers as seeing that no guilty man escapes. It is his duty to see that nothing but competent evidence is submitted to the jury.

2. **Same—Grave Breach of Duty to Go Outside Record in Seeking Conviction.** It is a grave breach of duty for a prosecuting attorney to seek by innuendo or artifice to procure a conviction by injecting into the case facts or conclusions not based upon the evidence adduced at the trial.

3. **Appeal and Error—Consideration of Extraneous Facts Harmful Where Case Doubtful on Legitimate Evidence.** In a case of some doubt on the facts legitimately in evidence, the consideration of extraneous facts not in the record cannot be considered harmless.

Appeal from District Court, Beckham County; T. P. Clay, Judge.

Ivan Brower was convicted of larceny of live stock, and he appeals. Reversed and remanded.

Tracy & Minton, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J.  Ivan Brower, plaintiff in error, here designated the defendant, was by a verdict of a jury rendered August 3, 1921, found guilty of the larceny of a domestic animal, as charged in the information, without fixing the punishment.  Subsequently the court, in rendering judgment upon the verdict, assessed the punishment at the minimum provided by law, confinement in the penitentiary for a term of five years.  Just before Christmas preceding the trial the defendant had lost a horse and had borrowed another horse to search for the one he had lost.  On the night before Christmas he claims he tied this borrowed horse to a hitching rack in Sayre.  The prosecuting witness, Joe Montgomery, on this night rode his father's mare into Sayre and tied it to the same hitching rack, then proceeded to a picture show.  During the progress of the show he was informed that his mare was gone.  A search was made about town, without results.  Early the next morning, in company with his brothers, he renewed the search, and the mare was tracked to the home of the defendant, about 9 miles distant, where the searchers arrived at about 11 o'clock Christmas morning.  As they approached the barn on defendant's premises they discovered the mare with a saddle on, and the defendant standing by the animal's side, doing something to the saddle.  As the prosecuting witness and his brothers drew near in their car, according to the testimony of the prosecuting witness, the following took place:

"He [the defendant] halloed out and asked if that was our horse.  I told him it belonged to my father, and I walked out to where he was, and asked him what he drove it out

for; and he said he didn't drive it out. He said he got on it through a mistake at Doxey. I guess I said a few angry words.''

Sam Montgomery, a brother, testified:

''Joe asked him how come him to ride the mare out. He said he didn't ride her out. Joe told him he needn't tell that, as he tracked her out, and then Ivan said he got her through a mistake at Doxey; he guessed he got on the wrong horse. I told my brother to get on the mare, and Ivan got in our car and rode back part of the way with us, looking for the horse that he said had gotten away from him. As he got out of the car at Doxey he said he was sorry we had to come after the mare; that it was just through a drunken mistake; that the Bohannon boys must have got him on the wrong horse at Sayre.''

Defendant admitted taking the mare, and claimed it was a mistake; that he thought it was the horse he had borrowed to hunt for his own horse that had strayed away, and that he did not discover his mistake until the next morning.

The assignments of error seriously worthy of consideration are three:

First. That the evidence is insufficient to support the verdict.

Second. Misconduct of the county attorney and the court.

Third. That the court improperly permitted the state to show that the accused had been convicted of other crimes and misdemeanors.

We will first notice the last-named assignment. The record shows that proof of other offenses was admitted only for the purpose of reflecting upon the credibility of the accused as a witness, and the jury were advised that they should consider it only for that purpose, both when such evidence was

introduced and in the court's instructions to the jury. In this there was no error. This practice is authorized by statute in this state. Section 585, Comp. St. 1921 (Code of Civil Procedure) is as follows:

"No person shall be disqualified as a witness in any civil action or proceeding, by reason of his interest in the event of the same, as a party or otherwise, or by reason of his conviction of a crime; but such interest or conviction may be shown for the purpose of affecting his credibility."

Section 2699, Id., provides:

"Except as otherwise provided in this and the following chapter, the rules of evidence in civil cases are applicable also in criminal cases," etc.

A misdemeanor is a crime within the meaning of our statutes. Section 1502, Comp. St. 1921:

"Crimes are divided into: First. Felonies. Second. Misdemeanors."

A strict adherence to the former rule of this court, that only such crimes as involve moral turpitude may be shown as affecting the credibility of a witness, has been since modified, because the original rule has been enlarged by statute. Hendricks v. State, 23 Okla. Cr. 18, 212 Pac. 330; Queen v. State, 23 Okla. Cr. 146, 212 Pac. 1021; Whitlow v. State, 24 Okla. Cr. 307, 218 Pac. 162.

From the part of the testimony herein recited, and from other portions of the record, it appears that this was a close case on the facts; that the jury might have consistently found from the evidence that the defendant took the animal through mistake, without any criminal intent. This makes the assignment of error concerning the alleged misconduct of the court and county attorney all the more important. In the cross-examination of the accused the following appears:

"Q. What did you mean by telling me in the office later that you didn't ride that mare out there? A. I didn't tell you that, I don't think, Mr. Speed.

"Q. Yes; you did.

"The Court: Don't argue with the witness.

"Q. Do you mean to tell me that you didn't say that? A. I don't see no cause to tell you that. I wasn't at no trial or no preliminary. Why should I tell you that? I was just making a bond. I didn't have no cause to tell you anything.

"Q. You remember that you told me something? A. I don't remember telling you nothing like that.

"Q. Do you remember saying something about going down into your pasture on your mount, and this mare with the saddle on was down there with your mules? A. I said I went down in my pasture on my mount.

"Q. On another horse? A. No, sir; I didn't tell you that.

"Q. And your two mules were down there, and this mare was with them? A. Didn't I tell you Bell had got the mules out of the field?

"Q. No, sir. You don't remember saying that? A. I did not say that to you.

"Q. You didn't? A. No, sir.

"Q. You don't remember anything of that statement you made about trying to excuse yourself about taking the mare? A. I never made no statement to you to excuse myself."

In the county attorney's argument to the jury this appears:

"Take this testimony about getting the horse at Doxey and about Sayre; about where he got this animal, and who put him on the wrong animal—these Bohannon boys. He didn't bring them up here to show that was true. Gentlemen, I don't believe a word of it, and I have my reasons, and I have better reasons, probably, than you have (interrupted)—

"Mr. Minton: We object to the remarks of the county attorney in which he informs the jury he has better reasons to believe he is guilty than they have.

"The Court: Overruled; he may have better reasons, for all I know.

"Mr. Minton: The defendant excepts and objects to the remarks of the court and asks that the jury be instructed to disregard it.

"The Court: Overruled. Go ahead.

"Mr. Minton: Exception."

It is well established in this and other courts that a prosecuting attorney in a criminal case represents the public; that he is a quasi judicial officer, charged as much with the duty of seeing that no innocent man suffers as of seeing that no guilty man escapes. It is his duty to see that nothing but competent evidence is submitted to the jury, and it is a grave breach of duty to seek by innuendo or artifice to procure a conviction by injecting into the case any material facts or conclusions not based upon the evidence adduced at the trial. Ewing v. State, 17 Okla. Cr. 690, 190 Pac. 274; Childs v. State, 13 Okla. Cr. 461, 165 Pac. 622; Gamblin v. State, 12 Okla. Cr. 381, 157 Pac. 367; Watson v. State, 7 Okla. Cr. 590, 124 Pac. 1101; Mulkey v. State, 5 Okla. Cr. 76, 113 Pac. 532; 22 R. C. L. 104.

The county attorney, in his cross-examination of the defendant, led the jury to believe that the defendant had made conflicting statements to him after his arrest, although there was no evidence introduced supporting that fact. In his argument to the jury he again forcibly emphasized that statement by saying, "I have my reasons and I have better reasons probably than you have" (for believing the defendant guilty). The court, inadvertently perhaps, further emphasiz-

ed this incompetent deduction by stating: "Overruled; he may have better reasons, for all I know." Being a case of some doubt on the facts, this damaging insinuation may have turned the scale against the defendant, and was manifestly prejudicial to the defendant, particularly when considered in connection with the fact that the evidence concerning other crimes showed that the defendant may have been a "bad actor" and an undesirable citizen. All of this may have caused the jury to render their verdict against the defendant on general principles.

In view of these conclusions, it will be unnecessary to further analyze the question of the sufficiency of the evidence.

The judgment of the trial court is reversed, and the cause remanded.

MATSON, P. J., and DOYLE, J., concur.