## PAUL MILES v. STATE.

No. A-5913.   Opinion Filed Dec. 24, 1928.
(273 Pac. 284.)

284

W. P. Hickok and S. C. Massingale, for plaintiff in error.

George F. Short, Atty. Gen., for the State.

DOYLE, P. J. The plaintiff in error was convicted upon an information, which, omitting formal parts, charges:

"That the said Paul Miles in the County and State aforesaid and on the day and year aforesaid, did then and there unlawfully, wrongfully, willfully, intentionally and feloniously make an assault in and upon one Charley Mitchell, with a certain weapon, to wit: a revolver, which he, the said Paul Miles then and there had and held in his hand, and did then and there with said weapon, to wit: a revolver unlawfully, willfully, wrongfully, intentionally and feloniously shoot the said Charley Mitchell, with the unlawful, wrongful and felonious intent then and there on

the part of him, the said Paul Miles to kill and murder the said Charley Mitchell, contrary to," etc.

The jury rendered the following verdict:

"We, the jury, drawn, empaneled and sworn in the above entitled cause, do upon our oaths find the defendant guilty of assault with intent to kill, as charged in the information herein, and fix his punishment therefor at imprisonment in the penitentiary for a period of 5 years."

To reverse the judgment rendered in pursuance of the verdict, the defendant appeals.

It appears: That the defendant, a young man about 27 years of age, a cripple having a defective or withered right arm and leg, was a teacher at Leonel. The complaining witness, Mitchell, D. L. Barry, and Paul Wills composed the school board of the district, and defendant was boarding with Paul Wills. That on the 9th day of April the three members of the school board met at the home of Mr. Wills and discussed the fact that it was reported that defendant had kissed two girls attending his school, aged 11 and 12 years. The board then went to the schoolhouse; there Mitchell demanded the resignation of defendant, although the school term lacked only a few days of expiring. Defendant refused to resign, and the board went to the county seat, interviewed the county attorney and county superintendent, and about dark returned to the home of Mr. Wills, where the defendant resided. The defendant was driving up Mr. Wills' cows, and the members of the board waited outside until he came.

The prosecuting witness testified: "I think we turned our lights on the car possibly the last two miles. When we got there Mrs. Wills informed us that Mr. Miles had gone after the cows and we stayed outside on the south side of the house. When he came up he stopped within about 20 feet of where we were. I addressed him by saying: 'Well Paul, we are back again.' He said, 'I see.' Then I said: 'Have you changed your mind about resigning? He

said ' No.' I said 'Well we have arranged to have a hearing in the morning,' and he said, 'I am glad to know it. I hate to be kicked out of here like a dog.' I informed him I thought for his own good it would be best that he resign. Then he said, 'Mitchell, get off that old stuff, you know better than that. Mitchell, I have just began to find you out, I find you are a two-faced lying son of a bitch.' At that moment I stepped forward a couple of steps, then I stepped back. When I stepped forward Mr. Miles drew a gun, and when I stepped back I stood there for several seconds, he holding this gun on me and finally he fired one shot. I hollered 'Oh, he shot me,' and I ran around the house. Then Mr. Berry led me to my car. which was standing in the lane, about one hundred yards from the house. Mr. Miles hollered, 'Mitchell, how bad are you hurt?' I told him I didn't know, it was bad enough."

Paul Wills testified that "Mr. Mitchell said, 'We are back.' Defendant said, 'Yes, what are you going to do with me?' Mr. Mitchell asked him if he had changed his mind and he said he had not. And defendant then said, 'You fellows are just trying to kick me out of here like I was a dog. Mitchell, I am just finding you out; you are just a double crossing, or something of that sort of 'son of a bitch.' Mr. Mitchell jerked his hands out of his pockets and said, 'I won't take that,' and started towards him; Miles was off about 15 feet, and I would judge he got about half way to him, when Miles shot him. He jerked the gun out of his left overcoat pocket and it went off."

For the defense, Paul Miles, as a witness in his own behalf, testified: "My age is 27 years, I came to Dewey county when six months old and have lived here practically all my life; I have a withered arm and leg since I was 2½ years old, since old enough I have been engaged in teaching school in Dewey county, was principal of the school and Mrs. Binghnum was my assistant; I have been teaching there for four years and boarded with Mr. Wills. The school board called at the school that day and Mr. Mitchell asked me to resign and I told them that I did not think

I had done any wrong and would not resign, three more days of school and two for examination would be the end of the term, the board left saying that they were going to Taloga; that evening I went home to Mr. Wills; after supper Mrs. Wills told her six year old boy to go after the cows, I said, 'I will just go after them myself,' and I went. It was cool that evening and I put on my overcoat, it was about a half mile to the pasture. Returning with the cows I saw the car drive up, the lights were burning on the car, I put the cows in the corral and came on to the house, I saw three men standing there, I supposed they were waiting for me so I stopped about 12 feet of them; Mr. Mitchell said, 'We are back,' and said 'The county superintendent will be out tomorrow morning if you don't resign.' I said, 'I will just wait to see what she does, I will have a chance to state my case.' He said, 'I think Mr. Miles it would be to your advantage to resign.' I said 'Mr. Mitchell, you don't care for my advantage, you don't care for my welfare at all. You have been two-faced all along. I am just finding you out,' and I called him the words that Mr. Wills related here on the stand. He said, 'I won't take that off anybody,' and he took his hands out of his pockets and came towards me, I saw something flash in his right hand, I retreated a few steps and said, 'Look out, Mitchell.' He advanced to within 2 steps of me, about six feet I should judge; my gun was in the slash pocket of my overcoat; I reached in there, got the gun and shot from the hip; Mr. Mitchell hollered, 'Oh, he shot me' turned and ran to his car followed by Mr. Berry; I put his gun back in my pocket, walked out and said, 'Are you badly hurt, Mr. Mitchell?' and he said, 'Bad enough.' I thought Mr. Mitchell had a knife in his hand and when he got within six feet or two steps of me I considered that I could not retreat fast enough to get out of his way, I would have to turn around and by that time he would be on me and I considered that I

could not wait any longer with safety so I shot Mr. Mitchell in self-defense."

The first assignment of error is the usual one, that the court erred in overruling the motion for a new trial.

The second assignment is that the court erred in overruling the demurrer to the information.

The grounds of the demurrer were that the information does not state facts constituting an offense against the laws of the state of Oklahoma, and that said information charges more than one offense in the same count.

The information alleges that defendant shot Charley Mitchell, with the felonious intent to kill and murder. The common-law offense of assault with intent to murder is not in our Penal Code. There is a well-recognized distinction between an assault with intent to murder and an assault with intent to kill. However, we think the facts alleged are sufficient to charge the offense of assault with intent to kill by shooting with a revolver; that the words "and murder" is a mere redundance. It follows that the court did not err in overruling the demurrer.

Among others, the court gave the following instructions:

"1.  An assault is any unlawful and wilful attempt or offer with force and violence to commit a corporal hurt on another; a battery is any willful and unlawful use of force or violence upon the person of another, whatsoever may be the degree or means of violence used, and every battery includes an assault.

"2.  Any person who intentionally or willfully shoots, or attempts to shoot at another with any kind of firearm with intent to kill any person, is guilty of an offense and may be prosecuted therefor, and the punishment for said offense is imprisonment in the penitentiary not exceeding ten years.

'3. Any person who commits an assault and battery upon another with intent to do bodily harm without justifiable or excusable cause is punishable by imprisonment in the penitentiary not exceeding five years or in the county jail not exceeding one year."

Instruction No. 4 defines the punishment for simple assault and battery.

In instruction No. 5 the court instructed the jury that the defendant was charged with the offense defined by the first clause of section 1756 of the Penal Code. Said section provides that:

"Any person who intentionally and wrongfully shoots at, or attempts to shoot at another, with any kind of firearm, airgun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death or in resisting the execution of any legal process, is punishable by imprisonment in the penitentiary not exceeding ten years." Section 1756, C. S. 1921.

Our Penal Code defines other felonious assaults by the use of deadly or dangerous weapons besides assault with intent to kill. Section 1764 provides:

"Any person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot at another, with any kind of firearm or airgun, or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in a county jail not exceeding one year."

The court instructed the jury as to the included offense as follows:

"6. But if under the evidence and these instructions you do not find the defendant guilty of the offense of wrong-

fully and feloniously shooting the said Charley Mitchell with intent to kill him, but you do find and believe from the evidence, beyond a reasonable doubt, that the defendant is guilty of an assault and battery committed on or about the 9th day of April, 1925, in Dewey County, Oklahoma, in that he did then and there with intent to do bodily harm and without justifiable or excusable cause commit an assault and battery in and upon Charley Mitchell with a firearm with intent to injure the said Charley Mitchell, then you should find the defendant guilty of assault with intent to do bodily harm without justifiable or excusable cause and so say by your verdict."

Under the charge of intentionally and wrongfully shooting another with a firearm with intent to kill as defined by the first clause of section 1756, the defendant may properly be convicted of the included offense of shooting another with a firearm with intent to injure, although without intent to kill such person, as defined by the second clause of section 1764.

Under the statute (section 2740, C. S. 1921) the trial court should submit the case to the jury for consideration upon every included lesser offense which the evidence in any reasonable view of it suggests, and the instructions must be applicable to the testimony introduced upon the trial.

Under the charge of intentionally and wrongfully shooting another with intent to kill, and under the evidence in the case instructions Nos. 3 and 6 above quoted do not properly submit the issue of shooting another with a firearm with intent to injure, although without intent to kill such person. The policy of the law is that all persons shall have a fair and impartial trial. It cannot be said that a fair and impartial trial has been had unless the jury has been properly instructed as to the law of the case; and where the instructions do not fully present all the material issues raised, the judgment of conviction will be set aside.

Harris v. State, 15 Okla. Cr. 369, 177 P. 122; Love v. State, 12 Okla. Cr. 1, 150 P. 913.

An instruction is erroneous, although correct as an abstract proposition of law, if it leaves the jury in doubt or uncertainty as to how it should be applied to the evidence. Roddie v. State, 19 Okla. Cr. 63, 198 P. 342.

We are of opinion that the evidence, both on behalf of the state and that of the defendant, if it established the guilt of the defendant of any offense, showed that the offense committed was shooting another with intent to kill as charged in the information, or the included offense of shooting another with intent to injure and without intent to kill and without justifiable cause. It will be observed that the verdict rendered by the jury is: "Guilty of assault with intent to kill as charged in the information." Such an offense was not included within the allegations of the information in this case and was not shown by any evidence in the case. The verdict rendered is therefore not responsive to the issues under the evidence, and is too vague and uncertain to support the judgment rendered. Clemons v. State, 8 Okla. Cr. 452, 128 P. 739.

For the reasons stated the judgment appealed from is reversed, and the cause remanded for further proceedings in accordance with this opinion.

EDWARDS and DAVENPORT, JJ., concur.