## LUTHER BARTLEY ISAAC v. STATE.

No. A-10560. Sept. 18, 1946.
(172 P. 2d 806.)

Counts & Jones, of McAlester, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Tom G. Haile, Co. Atty., Pittsburg County, of McAlester, for defendant in error.

BAREFOOT, J. Defendant, Luther Bartley Isaac, was charged in the district court of Pittsburg county with the crime of murder. He was tried, convicted of manslaughter in the first degree, and his punishment assessed at four years in the State Penitentiary, and he has appealed.

Defendant in his brief presents but one question as error. It is contended that the court erred in failing to instruct the jury on manslaughter in the second degree, and on assault and battery. This necessitates a short statement of the facts as revealed by the record.

Defendant, Luther Bartley Isaac, was charged with having murdered James F. Isaac Coonce in Pittsburg county on the 20th day of October, 1943 between 8 and 9 o'clock in the evening. The killing occurred about one mile south of McAlester, and near the home of Joe Moore.

On the afternoon of October 20, 1943, the defendant, Jim Brown and the deceased met at a beer tavern in the city of McAlester. They drank several glasses of beer, and then went to another beer tavern, where they met Buster Moore, whom they did not know. It was agreed that the party of four should go to the nearby town of Krebs in Pittsburg county, in defendant's car, it being

understood that Buster Moore should do the driving, as defendant did not have proper driving license.

They arrived at Krebs some time after 6 o'clock, and while there visited two beer taverns, and admitted that they drank beer at both places. About 8 'clock they decided to return to McAlester. Up to the time they left Krebs, there had been no difficulty, and no harsh words had been spoken by any of the party. On the way back to McAlester, the defendant and deceased began to argue and quarrel with reference to the defndant having drunk out of the glass of beer of deceased. It is unnecessary to go into detail as to what was said. Defendant testified that deceased had a knife in his hand and threatened to kill him or cut him.

When the automobile reached Thirteenth street, in McAlester, Jim Brown jumped out of the car, while it was running, and went to his home. The other three parties proceeded to the home of Joe Moore, a brother of Buster Moore, about one mile south of McAlester, where Buster lived. The testimony of Buster Moore and the defendant is that just before arriving there, the defendant and deceased, who had continued their quarreling, got out of the automobile and began to fight. This fight continued for some time, and when it was over Buster Moore went into the house of his brother, Joe Moore, and told him that a man had been killed or injured. Joe Moore and a younger brother went to McAlester and informed the officers, and Bill Alexander, sheriff of Pittsburg county, and Deputies Clint Gladden and Bob Pollack immediately went to the scene of the difficulty. When they arrived, they saw deceased lying in the road, and the defendant standing nearby, and as

they got out of the automobile, the defendant knelt down and was holding the head of deceased.

When questioned by the officers, the defendant answered that a man had been hurt. When asked who had hurt him, defendant answered: "I don't know, but a tall, slim fellow, I think he was from Texas,—had on a taxicab driver's cap or one similar." They asked where he was, and defendant stated that he "had left."

Defendant testified in his own behalf, and admitted that he and deceased were fighting, and that they were the only ones so engaged. He also admitted that he kicked the deceased, but testified that deceased was striking at him and that he thought he had a knife, and was trying to cut him, and that his actions were in self-defense. The defendant admitted that he did not see either Moore or Brown at the time of the fight, and did not know where they were; and that neither of them participated in the fight.

The officers who went to the scene found the deceased lying on the west side of the pavement. It showed that the body had been dragged across the road. A pool of blood was near the place from where the body had been removed. The deceased died soon after being taken to the hospital, as a result of his injuries.

The doctors and the undertaker who examined the body testified that the deceased had a fracture involving the macilari bone on the right at the lower middle angle of the eye with the depression of this bone below the eye, and the fracture extended through the center front of the eye socket forming the front of the skull, and that the bone was depressed toward the mouth. They testified that it was caused, in their opinions, from a heavy

instrument or exceedingly hard blow. One of the doctors testified: "It must have been an instrument. I couldn't conceive of anything else—or some kind of weapon."

An examination and search of the premises by the officers on the night of the killing and the next day failed to disclose any instrument of any kind used in the killing. It was the claim of defendant that he only struck deceased with his fist, although he admitted kicking him with his feet. Both Buster Moore and Jim Brown testified for the state, and as above stated. Charges were filed against these parties, but they were used as witnesses, and the charges against them were not pressed.

Evidence was offered by the state to show that the deceased had a crippled hand and leg. Others testifying for defendant stated they had not observed these deformities.

Defendant cites and principally relies upon the case of Palmer v. State, 78 Okla. Cr. 220, 146 P.2d 592, as authority for the reversal of this case. Also, the case of Johnson v. State, 59 Okla. Cr. 283, 58 P.2d 156; Mead v. State, 65 Okla. Cr. 86, 83 P.2d 404; Miles v. State, 41 Okla. Cr. 283, 273 P. 284, and Moore v. State, 48 Okla. Cr. 106, 289 P. 788.

The facts in the Palmer case are somewhat similar to the facts in the instant case; and in each of the cases above cited the cause of the death of deceased was the result of a fight, and the killing of deceased by being struck by defendant with his fists. In most of these cases the court included in his instructions a charge upon manslaughter in the second degree and an instruction upon assault and battery, which was treated as an included offense under the charge of murder or manslaughter set forth in the information.

In the Palmer case, the defendant was charged with manslaughter in the first degree, as the result of a fight between defendant and deceased and in which the deceased was killed by being knocked down by defendant striking him with his fist, and his head hitting the pavement. There was some evidence that deceased had stumbled and fallen. The court instructed the jury upon manslaughter in the first degree, but did not instruct upon manslaughter in the second degree, and assault and battery. We held in that case that the court erred in failing to submit to the jury an instruction upon manslaughter in the second degree and assault and battery. And that this was reversible error, notwithstanding the fact that defendant had failed to request the giving of such instructions. This was based upon the principle that a fair and impartial trial should be given defendant, and that for this to be true, it was the duty of the court to properly instruct the jury as to the law of the case; and that all material issues, including the contention of defendant, should be submitted for the jury's determination.

In the Johnson case, deceased was killed by reason of being struck by defendant with his fist while engaged in a fight. He was charged with murder. He pleaded self-defense. The court instructed the jury upon murder and manslaughter in the first and second degrees, as included offenses. The case was reversed by reason of giving certain instructions and the failure to give certain requested instructions. But it will be noted that the court did give an instruction on manslaughter in the second degree.

In the Mead case, defendant was charged with murder, by reason of having struck deceased with his fist

in a fight, and deceased having died as a result of being so struck. The court instructed the jury upon the issue of murder, manslaughter in the first and second degrees. Defendant was convicted of manslaughter in the second degree. The court held that the issues of murder and manslaughter in the first degree should not have been submitted to the jury as the evidence did not so justify. The court said [65 Okla. Cr. 86, 83 P.2d 409]:

"Under the law and the evidence in this case, the issues to be determined by the jury were manslaughter in the second degree, or whether the alleged homicide was excusable under the provisions of § 2235, O. S. 1931, Tit. 21 O. S. 1941 § 731, supra, and where the evidence justifies it, as in this case, the court should have instructed the jury on the issue of assault and battery."

The case was reversed and remanded.

In the Miles case, supra, the charge was assault with intent to kill, by reason of shooting with a pistol, yet the court instructed the jury upon assault and battery as an included offense. The second paragraph of the syllabus in that case reads:

"The policy of the law is that all persons shall have a fair and impartial trial. It cannot be said that a fair and impartial trial has been had unless the jury have been properly instructed as to the law of the case; and where the instructions do not fully present all the material issues raised, the judgment of conviction will be set aside."

And in the Moore case, supra, it is stated in the second paragraph of the syllabus:

"In a prosecution for murder, the court should submit the case to the jury for consideration upon every degree of homicide which the evidence in any reasonable view of it suggests; and, if the evidence tends to prove different degrees, the law of each degree which the evidence tends

to prove should be submitted to the jury, whether it be requested on the part of the defendant or not."

In that case deceased was struck by defendant with his fist, and was also kicked by defendant. The court instructed the jury upon the issues of murder, manslaughter in the first and second degrees, and upon excusable and justifiable homicide.

The instruction of the court in this case are excellently worded and show deep thought in their preparation in so far as they present the issue of murder and manslaughter in the first degree, and the plea of self-defense as presented by the evidence. But it is our opinion from a reading of the record in this case, and the cases that have heretofore been decided by this court, that the issue of manslaughter in the second degree, and especially the issue of assault and battery, should have been submitted to the jury for their determination. It was the contention of defendant that only his fists were used in the fight with deceased. One of the two doctors who testified for the state from an examination of an X-ray picture taken by him of deceased, testified:

"Q. From your experience as a physician, could you state what caused that fracture? A. Well, I couldn't say what caused it, but it was evidently made from a heavy instrument, or exceedingly heavy blow."

The second physician testified that he had examined the deceased and as to the wounds thereon, and that in his opinion one wound had been caused by a blunt instrument of some kind, and another by a sharp instrument. But the only eyewitness to the affair did not see any instrument of any kind. None was found by the officers at or near the place of difficulty, although they searched therefor both the night of the killing and the

next day. The defendant testified that he only struck defendant with his fist, and no weapon of any kind was used by him. He also testified that he was only acting in self-defense as he thought he saw a knife in the hand of deceased.

In the case of Pritchett v. State, 79 Okla. Cr. 401, 155 P.2d 551, 557, it is said:

"We do not feel justified in modifying the judgment and sentence. The punishment for manslaughter in the second degree runs from a fine and jail sentence to a maximum of four years in the penitentiary. If the defendant is retried on that charge and should be found guilty, we think it best that a jury should decide the punishment to be given after hearing all the evidence presented. Of course if the defendant is found not guilty, there will be no punishment."

For the failure to submit all of the issues by proper instructions, as above stated, the judgment of the district court of Pittsburg county is reversed, and the case remanded for a new trial.

JONES, P. J., concurs. DOYLE, J., not participating.