### EARL COSLOW v. STATE.

No. A-10628.   Feb. 19, 1947.

(177 P. 2d 518.)

Laynie W. Harrod and Dave R. Tant, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and Wm. N. Mounger and Jack Tellegen, Asst. Co. Attys., both of Oklahoma City, for defendant in error.

BAREFOOT, P. J.    Defendant, Earl Coslow, was charged in the district court of Oklahoma county with the crime of manslaughter; was tried, convicted of manslaughter in the second degree, and sentenced to serve a term of two years in the State Penitentiary, and has appealed.

For a reversal of this case, it is contended, first:

"The trial court erred in overruling the demurrer of the defendant to the information filed in said cause."

The charging part of the information was as follows:

"* * * the said defendant * * *, did then and there knowingly, wilfully, wrongfully, unlawfully, and feloniously make an assault, without justifiable or excusable cause, and in a heat of passion, but in a cruel and unusual manner, upon one Tommy Wayne Wiley, by striking the said Tommy Wayne Wiley with his fist with sufficient force as to knock him, the said Tommy Wayne Wiley, to the concrete floor, then and there inflicting certain mortal wounds about the head, of which mortal wounds the said Tommy Wayne Wiley did languish and die on the 12 day of June, 1944, * * *."

In considering a demurrer to an information, the evidence offered at the trial cannot be taken into consideration. At the time of passing upon the demurrer, the court has not had the benefit of the evidence to be produced at the trial. Only the terms of the indictment or information may be considered on the demurrer. This court has never applied strict rules of construction in passing upon the terms of an indictment or information.

The sixth and seventh paragraphs of 22 O. S. 1941 § 409, provide:

"6. That the act of omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended.

"7. That the act or omission charged as the offense, is stated with such a degree of certainty, as to enable the court to pronounce judgment upon a conviction according to the right of the case."

It is provided by 22 O. S. 1941 § 410 as follows:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

A careful examination of the information filed in this case convinces us that the crime charged against defendant is clearly and distinctly set forth in ordinary and concise language and in such manner as to enable the defendant or a person of common understanding to know what was intended, and the offense with which he stood charged. The offense is stated with such a degree of certainty as would enable the court to pronounce judgment upon conviction according to the right of the case. It is such that would bar a second prosecution for the same offense if defendant should not be convicted thereon. The only case cited by defendant to sustain his contention is State v. Knoll, 72 Kan. 237, 83 P. 622. That case does not consider a demurrer to the indictment or information, but is decided upon the question of the insufficiency of the evidence to sustain the conviction under the statutes of that state.

We are of the opinion that the court did not err in overruling the demurrer to the information. Hunter v. State, 63 Okla. Cr. 24, 72 P. 2d 399; Burns v. State, 72 Okla. Cr. 409, 117 P. 2d 144.

The second assignment of error is:

"The court erred in giving instruction No. 16 to the jury, to the giving of which instruction the defendant duly objected and excepted."

This instruction is as follows:

"It is the theory of the defendant in this case that he killed the deceased in self-defense. Homicide is not without authority of law but is justifiable under the law of

self-defense when committed by any person when resisting an attempt to commit an assault upon him and there is reasonable ground on the part of the defendant to apprehend a design or purpose of the person killed to assault him and do him some personal injury, and it appears to the defendant that there is imminent danger of bodily injury being done him by the person killed, and, you are instructed in this connection that any person who is unlawfully assaulted by another is justified in using all reasonable force necessary to repel such assault or attack as the same reasonably appears to him necessary at the time, and that if the person so assaulted uses no greater force than reasonably appears to him necessary at the time to repel such attack or assault such actions of such person would be justified under the law of self-defense, provided the killing was not done in a cruel and unusual manner or by means of a dangerous weapon."

That part of the instruction which is objected to is:

"It is the theory of the defendant in this case that he killed the deceased in self-defense."

It is contended that defendant did not rely upon the question of self-defense, but that he did not kill the defendant, or that the defendant was not killed by reason of the blows struck by defendant, but that deceased had high blood pressure and that was the cause of his death. It is contended that the above instruction indicated to the jury the court's opinion as to the weight of the evidence. We do not concur in this conclusion. Throughout the evidence of defendant, it was his contention that deceased had an open knife in his hand, and was in fact making an assault upon him at the time he struck deceased, and that this was his reason for striking him. Under this evidence, the court was justified in presenting the issue of self-defense. No doubt if the court had failed or refused to instruct the jury on the issue of self-defense, defendant would have claimed that as reversible error.

It is unnecessary to quote from other instructions given by the court, but an examination of the instructions reveals that they are fair to the defendant, and gave the jury ample opportunity to find the defendant not guilty if they deemed the evidence so justified.

The third assignment of error is:

"The court erred in submitting the issue of manslaughter in the first degree to the jury."

This defendant was convicted of manslaughter in the second degree. We have often held that where one was convicted of manslaughter in the first degree, he would not be heard to question an instruction with reference to murder, and where one is convicted of manslaughter in the second degree, he will not be heard to complain of an instruction on manslaughter in the first degree, where it is not shown that defendant was injured thereby. Grindstaff v. State, 82 Okla. Cr. 31, 165 P. 2d 846.

Defendant was charged in the instant case with manslaughter in the first degree, and was convicted of manslaughter in the second degree, as an included offense. We have often held that it is the duty of the court to instruct the jury upon every degree of homicide which the evidence in any reasonable view of it suggests. Chandler v. State, 79 Okla. Cr. 323, 146 P. 2d 598; Pritchett v. State, 79 Okla. Cr. 401, 155 P. 2d 551; Palmer v. State, 78 Okla. Cr. 220, 146 P. 2d 592; Roberts v. State, 82 Okla. Cr. 75, 166 P. 2d 111; Isaac v. State; 83 Okla. Cr. 33, 172 P. 2d 806.

In the case at bar, the court instructed the jury upon the issues of manslaughter in the first degree, manslaughter in the second degree, assault and battery, and upon the issues of excusable and justifiable homicide.

21 O. S. 1941 § 711 provides:

"Homicide is manslaughter in the first degree in the following cases:

"1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

"2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

"3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."

Defendant was charged under this statute. The court instructed the jury under the first and second paragraphs thereof. We are of the opinion that the evidence justified these instructions, which left the issues for the determination of the jury.

The fourth assignment of error is:

"Misconduct on the part of the county attorney in persisting in asking incompetent, prejudicial, and irrelevant questions."

The first objection was to questions asked the witness Martha Lynch. This objection is not well taken, for the reason that the record reveals that the court sustained objections of counsel to the witness' testimony and it was stricken from the record.

The second objection is with reference to certain questions asked the defendant on cross-examination. These questions had reference to defendant having been previously convicted in both felony and misdemeanor cases, and of having served time in the State Penitentiary, and paid fines in different courts. The court sustained objections to

the questions with reference to defendant having been convicted and paid fines in misdemeanor cases for the reason that they were not crimes involving moral turpitude. The questions concerning defendant's conviction on felony charges were permitted to stand. There was no error in this procedure. When a defendant takes the witness stand and testifies in his own behalf, the prosecution has the same right to cross-examine him with the same latitude as any other witness. Under the statutes, he may be interrogated concerning any former convictions of crime. 12 O. S. 1941 § 381. Whether an offense involves moral turpitude is not the test in this state. Howard v. State, 67 Okla. Cr. 445, 94 P. 2d 947; Abby v. State, 72 Okla. Cr. 208, 114 P. 2d 499, 115 P. 2d 266. There was no error in permitting the county attorney to cross-examine the defendant as to previous convictions for crime.

This defendant was charged with the killing of Tommy Wayne Wiley at Bill's Tavern, or tap room, in Oklahoma City, on June 12, 1944. Defendant had gone to the tavern in the afternoon on June 11th. Tommy Wayne Wiley, whose eyesight was not good, was in the tavern, and around 11 or 11:30 in the evening went over to the booth where defendant and others were drinking beer. He knew some of the parties in the booth, but did not know the defendant. He was asked to sit down and drink some beer, which he did. Soon thereafter Tommy Wayne Wiley and some of the parties left the tap room, going outside the building, but returned within a few minutes. They were standing near the booth where defendant and others were seated. Some conversation took place between defendant and Wiley with reference to drinking more beer. The record does not disclose what was said, but nothing to cause any serious controversy. Many persons were present and a number of them testified. Others did not. Defendant tes-

tified that Wiley had an open knife in his hand, and held it up as if he intended to strike him with it. He immediately hit deceased with his fist, knocking him to the concrete floor, which was covered with linoleum. Wiley was taken from the tavern by his friends to the home of one of them, an ambulance was called, and he was taken to the hospital. He entered the hospital about midnight, and died about 2:30 the morning of June 12, 1944, as the result of a blow, as testified to by the doctor who examined him. The doctor testified that he saw deceased soon after he was admitted to the hospital, and that at the time he was in a "state of deep unconsciousness," and his blood pressure was high, 170 over 84, and that the normal blood pressure of a man of his age was 129, but his death was caused by a blow which he had received.

Photographs were introduced in evidence and attached to the case-made. They show an abrasion or cut on the face of deceased. Two pocketknives were also introduced in evidence and attached to the case-made. There was much conflicting testimony as to whether deceased had a knife open at the time of the difficulty. A pocketknife was found in his pocket at the place he was taken from the tavern after the difficulty.

We can only conclude from the evidence that defendant did not intend to kill Tommy Wayne Wiley at the time he struck him. However, the statute does not require that one should intend to kill, under the manslaughter statute. It has often been held that one is responsible for his unlawful acts. This was a question of fact for the determination of the jury, and from a careful examination of the record, we cannot say that they came to the wrong conclusion. The punishment assessed was the minimum penitentiary sentence provided by the statute.

Finding no error which would require a reversal of this case, the judgment and sentence of the district court of Oklahoma county is affirmed.

JONES and BRETT, JJ., concur.