Donald Henry SULLIVAN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12637.

Criminal Court of Appeals of Oklahoma.

Dec. 3, 1958.

Rehearing Denied Dec. 31, 1958.

James H. Griffin, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., J. Walker Field, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Defendant-appellant was charged in the court of common pleas of Tulsa County with reckless driving, was tried before a jury, convicted and his punishment fixed by the jury at confinement for a term of ninety days in the county jail, and payment of a fine of $300 and costs.

For reversal three specifications of error are advanced, and being:

"No. 1. The court erred in overruling Plaintiff in Error's motion for a mistrial and motion for new trial, both being based on the prejudicial nature of the cross-examination of the Plaintiff in Error.

"No. 2. The alleged convictions referred to on cross-examination of the defendant did not involve moral turpitude and were therefore improper.

"No. 3. The punishment fixed by the jury is excessive and based on passion and prejudice."

These specifications will be treated together.

The offense charged is in the exact language of the pertinent portion of the statute (47 O.S.A. § 121.3), and its sufficiency

is not challenged. We have carefully read the instructions and note that no exceptions were offered, and no additional instructions requested. We think the instructions properly covered the issues, and were sufficient.

To prove its case, the State used two witnesses; the first being Walter Noonkaster, who testified that on February 12, 1958 in the evening he had ridden in an automobile on the Sand Springs four-lane highway, proceeding west towards Sand Springs; that the defendant Don Sullivan was driving; that at about 11:00 P.M. they had a wreck. He said that at the time of the wreck he estimated Sullivan was driving his car at a speed of around 85 miles per hour. He did not look at the speedometer at the time of the wreck, but a short time before about a mile and a half back, prior to the speed-up, he had noticed they were going at a speed of about fifty miles per hour. His conclusion of speed was an estimate. He said that the Sullivan car hit another car also being driven west; that the front end of the Sullivan car hit the back end of the other car. When witness came to, he was in an ambulance on the way to a hospital. Witness had met the defendant in a bar and was offered a ride to Sand Springs.

On cross-examination witness said that the car they ran into was in the process of passing a third car at the time of the collision. He said, "Well, we was quite a ways behind him when he started to pass this other car."

George Moore, trooper with the Highway Patrol, testified that at the time of the wreck in question he was on U. S. Highway No. 64, six-tenths of a mile east of Sand Springs, and he proceeded to the scene of the accident and made an official report covering the same. He had a copy of his report and by agreement was permitted to refer to it. He said the accident happened on U. S. Highway 64 about one and a half miles east of Sand Springs, and that the legal speed limit at that point in the night time was 55 miles per hour. Witness further testified:

"A. When I arrived at the scene of the accident, I found a 1954 Chevrolet sitting in a bar ditch just to the south side of the road, that had been damaged on the left side and the rear, and then off in a field from the road was sitting a 1957 Pontiac that had been heavily damaged to the front end. I found some tire marks upon the roadway and debris left from where the two cars had had an impact.

"Q. Describe that location, the point of impact. A. The point of impact was about the Center line of the two lanes of traffic going west on Highway 64, and from the position of the '54 Chevrolet, it was about 300 feet from the '57 Pontiac, it was 382 feet.

"Q. South and west of that point of impact? A. Yes, sir, that is correct. However, that would be north and back west. The cars were sitting south and west from the point of impact.

\*    \*    \*    \*    \*    \*

"Q. Did you find any skidmarks to the east of the point of impact? A. No, sir, there were no tire marks before the point of impact.

"Q. Did you draw any conclusion from that fact? A. Well, yes, sir.

"Q. What was it, please? A. It was my opinion that the defendant had been travelling at a high and excessive rate of speed and couldn't stop his car, and didn't attempt to put on his brakes before he run into the car.

"Q. There was no evidence of any braking action? A. Not until the point of impact.

"Q. Based upon that fact, and the distance of the cars from the point of impact, specifically defendant's car, did you make any estimate as to the speed of the defendant before the point of impact? A. Yes, sir, I did.

"Q. What was that, please? A. It was my opinion that the car was traveling 80 to 85 miles an hour."

Witness said that he did not see defendant at the scene of the accident, but saw him at the Hillcrest Hospital, and talked with him. Said he:

"A. Well, I had asked him how fast he had been driving, and he told me that he was driving right on the money, 55, and I asked him how much he had had to drink, it was very noticeable he had had quite a bit, and he said, 'one, two or three beers,' and he said, 'Oh, just make it three beers'.

"Q. You say it was noticeable, noticeable in what way? A. Strong odor of alcohol, smelled it on his breath."

This concluded the State's evidence.

The defendant testified in his own defense, and said that he ran the Alamo Bar in Sand Springs, and that in the evening of February 12, 1958, he was driving his car from Tulsa to Sand Springs, and he had an accident; that at the time he was driving his car between 55 and 60 miles per hour. Defendant further testified:

"Q. Now, will you please tell the jury what happened just prior to this accident up to the time the accident happened? A. Well, I was headed west out going to Sand Springs, and I started to pass two cars, there was one following the other; just at the moment just before I got past, the back car, well, he whipped out to pass the car in front of him, and we collided, and I don't know what happened after that.

"Q. All right. And now, about how close were you to this car that pulled out in front of you? A. Well, just about—I would say just up where he pulled in front of me, and that's about all, maybe ten or fifteen feet, something like that.

"Q. Just barely room for him to pull out? A. I was on his blind side about as much as he was on mine.

"Q. And you say you don't remember what happened after the accident? A. No, sir."

Defendant denied that he had been drinking prior to the accident.

On cross-examination defendant admitted that he had prior to the accident been convicted of speeding and convicted three times of driving without a driver's license, and admitted that he had on a prior occasion been in an accident and fined for leaving the scene. He was questioned about other convictions that he either denied or could not remember. The convictions in question were supposed to have been in the city court of Tulsa, a court of record.

Defendant further testified:

"Q. I direct your attention to the 22nd day of May, 1950, were you convicted of assault? A. Sir, before you ask any more of those, I don't remember all those dates and I don't remember just exactly when I was convicted and when I wasn't and all that stuff. All them dates back in '53 and '54, I might have told you some I was and some I wasn't.

"Q. Then you don't know? A. I don't recall none of them.

"Q. Well, would you say then that they didn't happen? A. I don't say they didn't happen; some of them did, and I don't recall which ones did and which ones didn't."

The State rested and counsel for the defendant moved for a mistrial, as follows:

"Mr. Griffin: At this time, comes now the defendant and moves for a mistrial in that there have been numerous charges and convictions alleged against the defendant, which have not been shown to be presented in good faith, and are prejudicial to the defendant, and also, the defendant further moves for a motion for a directed verdict of acquittal, for the reason that the evidence is wholly insufficient to show that a crime has been committed.

\*  \*  \*  \*  \*  \*

"Mr. Crossland: At this time the State will make an offer of proof, that

by the cross-examination of the defendant in this case, information was received by the assistant county attorney from the clerk's office of the Tulsa Municipal Court which I believe to be accurate, indicating that all dates and convictions inquired into upon cross-examination of this defendant were purported to be convictions. That part of the records of the Municipal Court are now unavailable since they are in the record in the Federal Courts; further, that at this time the court clerk of the municipal court, or his deputy, is not available to testify as to what the true records of the court indicate.

"The Court: Do mean that the municipal court records are in evidence in a case in the Federal Court?

"Mr. Crossland: A. Yes.

"The Court: Have you attempted to obtain those records?

"Mr. Crossland: I have personally contacted the deputy court clerk, the only representative of that office in the city at this time, and he informed me they are unavailable; I have not contacted the Federal people about them.

"The Court: Well, I think, of course, there is a presumption of good faith. Does the defendant have anything to offer to show bad faith on the part of Mr. Crossland in asking the questions on cross-examination?

"Mr. Griffin: Nothing, if the Court please, outside of the prejudicial nature of the questions and convictions as shown, and the inference that the assistant county attorney was referring to a so-called 'rap sheet' which he was reading, indicating that he had actual records showing convictions on the charges which he referred to.

"The Court: Well, the state of the record at this point, of course, is that any—that some of the convictions inquired about were admitted; others were denied, and some of them, the defendant said he didn't remember about. Without some specific showing of bad faith, I feel that the evidence at this point is not prejudicial—I mean the questions were not prejudicial in the absence of showing of some bad faith on behalf of the prosecutor, so the motion for a mistrial is overruled, and also a verdict for advised acquittal is also overruled."

Following this the court instructed the jury, and a verdict was returned as previously recited. The court among instructions given, advised the jury:

"You are instructed that evidence of previous convictions has been admitted in this case for the sole purpose of bearing upon the credibility of the defendant as a witness, and you should consider it in that connection only."

On motion for new trial the court heard evidence as to the state of the records of the municipal court of the city of Tulsa. It appears that at the time of a number of the convictions of the defendant the attorney for the city of Tulsa and the judge of the court would fail to write up a journal entry of judgment. There would only be a minute. In fact the records were, to say the least, slipshod for a court of record. The court, after the hearing made the following finding:

"I have examined the briefs in this case, read all the cases which you have cited, and done some research on my own.

"Of course, under the evidence in this case, as stipulated to between the state and the defendant, there were some convictions inquired about upon cross-examination which the defendant denied and which the state was not able to establish. I do not feel that there was any bad faith on the part of counsel in asking those questions. I think he had reasonable grounds to believe that he could establish those convictions and, on those grounds, I don't think there was any improper conduct on the part of the prosecution.

"Also, of course, we would have to go into the question of whether or not the questions were prejudicial. Now, the answers to the questions, the denial of the convictions, are all that are really in evidence before the jury. Were those questions prejudicial? Well, we have quite a list of convictions which the defendant admitted. It would be rather difficult to tell whether—the mere questions were enough to prejudice the jury after he admitted a considerable number of other convictions; like trying to find out which tooth of the buzz saw cut you, I'm afraid.

"I have also examined your authority on this question of cross-examination about prior convictions of offenses which may not have involved moral turpitude, and I think the only two cases that really directly pass on that are the cases of Coslow v. State [83 Okl.Cr. 378], 177 P.2d 518, and Martin v. State [94 Okl.Cr. 340], 235 P.2d 959, where the court has held that whether or not the offense involves moral turpitude is not the test. Actually, it is one that is almost impossible of application when you get down to specific cases. The last—the case of Starns v. State [Okl.Cr., 297 P.2d 421], reiterates the old rule in the affirmative form. It does not say in this case there are offenses questioned about which did not involve moral turpitude and were, therefore, not admissible. As a matter of fact, it goes further and holds that a conviction of driving while intoxicated does involve moral turpitude. If the precise issue had been determined by the court, in my opinion they would not have departed from the rule in the case of Coslow v. State and Martin v. State.

"So, all in all, I do not feel the motion for new trial should be sustained, and it is, therefore, overruled."

We still subscribe to the rule cited by defendant and set forth in Brower v. State, 26 Okl.Cr. 49, 221 P. 1050, where it is said:

"A prosecuting attorney in a criminal case represents the public; he is a quasi judicial officer, charged as much with the duty of seeing that no innocent man suffers as seeing that no guilty man escapes. It is his duty to see that nothing but competent evidence is submitted to the jury."

And where a prosecuting attorney asks a defendant testifying in his own self-defense, about alleged convictions that he knows he cannot substantiate, and for the purpose of prejudicing the accused in the eyes of the jury, such conduct is reprehensible and may be sufficient to cause a modification or even a reversal in case of conviction. But in the within case a careful reading of the evidence fails to disclose a factual situation that would justify this court in either modifying or reversing the within case on account of the cross-examination complained of. The admission of defendant that he was driving in the night time and at the time of the accident at a speed of between 55 and 60 miles per hour standing alone was an admission of the violation of the statute, 47 O.S.A. § 121.3.

The fact that the previous convictions inquired about by the prosecuting attorney may or may not have involved moral turpitude can have no bearing. The trial court correctly analyzed the case in his findings. We have said that when the defendant takes the witness stand and testifies in his own behalf, the prosecution has the right to cross-examine him with the same latitude as any other witness. He may be interrogated concerning any former convictions of crime. Whether the offense involves moral turpitude is not the test in this State. See cases cited by the trial court: Coslow v. State, 83 Okl.Cr. 378, 177 P.2d 518; Martin v. State, 94 Okl.Cr. 340, 235 P.2d 959. These cases effectively settle this issue in this jurisdiction.

Counsel fails to point out any supporting evidence in the record to indicate

that the verdict of the jury was the result of passion or prejudice, as now suggested on appeal. The punishment assessed was within the provisions of the applicable statute, 47 O.S.A. § 121.3.

The judgment appealed from is affirmed.

BRETT, P. J., and NIX, J., concur.